S12A1174. SMITH et al. v. ELLIS.
(731 SE2d 731)

NAHMIAS, Justice.

The principal question in this appeal is whether an employee who files an injury claim against his employer under the Workers' Compensation Act, OCGA §§ 34-9-1 to 34-9-421, and receives compensation in exchange for a "no liability" settlement with his employer that is approved by the State Board of Workers' Compensation

pursuant to OCGA § 34-9-15 (b), may then turn around and sue the co-employee who caused the injury in a tort action. Ten years ago, the Court of Appeals answered this question no, holding that the Act's exclusive remedy provision, OCGA § 34-9-11 (a), bars such a lawsuit based on the same injury for which the employee has already received a remedy under OCGA § 34-9-15 (b). See *Ridley v. Monroe*, 256 Ga. App. 686 (569 SE2d 561) (2002). In this appeal, however, the Court of Appeals was equally divided as to whether *Ridley* should be overruled, and the case was sent to this Court for resolution. See Ga. Const. of 1983, Art. VI, Sec. V, Par. V ("In the event of an equal division of the Judges [of the Court of Appeals] when sitting as a body, the case shall be immediately transmitted to the Supreme Court.").

We hold that *Ridley* was correctly decided. Thus, appellant Joseph Smith, having previously entered a Board-approved settlement with his employer under OCGA § 34-9-15 (b) in exchange for compensation, would be barred from suing appellee John Ellis for the same injury in tort if Ellis qualifies as an "employee of the same employer" as Smith, rather than a "third-party tort-feasor," as those phrases are used in OCGA § 34-9-11 (a). However, the evidence does not establish, without genuine dispute, that Ellis was acting as "an employee of the same employer," that is, in the course of his employment, at the time he injured Smith. The trial court therefore erred in granting summary judgment to Ellis, and that judgment is reversed.

1. On appeal from an award of summary judgment, we view the evidence and make all reasonable inferences from it in the light most favorable to the non-moving party. See *Kaplan v. City of Sandy Springs*, 286 Ga. 559, 560 (690 SE2d 395) (2010). Viewed most favorably to Smith, the evidence shows as follows. In February 2009, Smith and Ellis were both employed by The Knight Group, a company that builds and sells new houses. Smith was assigned to work at the Westcott Place subdivision in Dawsonville, and Ellis was assigned to the Red Hawk Ridge subdivision in Cartersville.

On February 12, Ellis called Smith to arrange a meeting so that he could borrow one of Smith's tools for his personal use. Ellis also wanted to shoot some new guns he had purchased, including an AR-15 rifle, in an undeveloped field in the Westcott Place subdivision. At 10:30 the next morning, the two men met at a house that Smith was finishing in Westcott Place. Ellis made one phone call regarding a problem with the house and then followed Smith through a couple more houses for which Smith was responsible before they went to lunch around 11:00 a.m. Smith and Ellis returned to the subdivision at 1:00 p.m., where Smith continued to work. Ellis had no work to do and left that part of the property to avoid being seen by one of his supervisors, because he was not supposed to be at Westcott Place. At

about 2:30 p.m., Smith met Ellis in the undeveloped field, which was a quarter of a mile away from the houses where Smith had been working. Ellis began firing his new rifle while Smith organized his work tools next to his truck. The rifle jammed three times. Ellis successfully cleared the first two rounds, but he accidentally shot Smith in the right thigh when he tried to clear the third round. The bullet went through Smith's right leg and into his left leg, causing serious injury.

The Knight Group fired both men shortly after the shooting. Smith filed a workers' compensation claim against the employer, alleging that his injury was compensable under the Act because it arose out of and in the course of his employment. See OCGA § 34-9-1 (4) (defining "injury" to mean "only injury by accident arising out of and in the course of the [employee's] employment"). The Knight Group ultimately agreed to pay Smith $6,000 in exchange for his stipulation that he had not sustained a compensable injury. Pursuant to OCGA § 34-9-15 (b), the "no liability" settlement was submitted to and approved by the Workers' Compensation Board, which issued an award denying the employer's liability on June 4, 2009.

Nine months later, Smith sued Ellis for negligence, and Smith's wife, appellant Janet Smith, sued for loss of consortium. Ellis moved for summary judgment on both claims, contending that the tort lawsuit was barred by the Act's exclusive remedy provision, OCGA § 34-9-11 (a).[1] Relying on *Ridley*, 256 Ga. App. 686, the trial court granted summary judgment to Ellis. Smith appealed, arguing that his tort action against Ellis was not barred by his workers' compensation settlement with The Knight Group because Ellis was acting as a "third-party tort-feasor" rather than as an "employee of the same employer" at the time of the injury. The whole Court of Appeals heard the case and divided evenly by vote of six to six. Both sides of the court focused on whether *Ridley* should be overruled rather than on the argument Smith had raised.

Presiding Judge Barnes, writing for the six judges in favor of reversing the trial court, said that "[i]f an injury is not compensable under the Workers' Compensation Act, then the exclusive remedy provision does not apply." *Smith v. Ellis*, Case No. A11A2171, decided March 29, 2012, slip op. at 7 (opinion of Barnes, P. J.) (unpublished). Presiding Judge Barnes then said that Smith's injury was not compensable under the Act, because "[n]o rational mind can see a causal

---

[1] It is undisputed that Janet Smith's claim is dependent on the viability of her husband's claim. See *Dickey v. Harden*, 202 Ga. App. 645, 646 (414 SE2d 924) (1992).

connection in this case between the conditions of [Smith's] employment and his injury." Id. at 8. Although *Ridley* held that a no-liability settlement triggers the Act's exclusive remedy provision and bars the injured employee from later suing a co-worker in tort, Presiding Judge Barnes concluded that *Ridley's* holding was "illogical" and should be overruled. *Smith*, slip op. at 8 (opinion of Barnes, P. J.).

Judge Andrews, writing for the six judges in favor of affirming the trial court, held that *Ridley* controlled and was correctly decided. *Smith*, slip op. at 5 (opinion of Andrews, J.). Although Judge Andrews agreed that the exclusive remedy provision does not apply if an injury is not compensable under the Act, he noted that Smith was actually compensated under the Act. See id. Judge Andrews observed that Smith's " 'settlement agreement was approved by the Board and thus it represents an award of the Board,' " id. at 5 (quoting *Aetna Cas. & Sur. Co. v. Davis*, 253 Ga. 376, 377 (320 SE2d 368) (1984)), and "when an employee accepts the terms of the Act, 'he as well as the employer is limited to those things for which the Act makes provision,' " id. at 4 (quoting *Boulware v. Quiktrip Corp.*, 226 Ga. App. 399, 400 (486 SE2d 662) (1997)). Judge Andrews concluded that allowing parties to circumvent the Act's exclusive remedy provision by agreeing to a no-liability stipulation would flout the Act's command that it be interpreted liberally to bring both employers and employees within its scope. See id. at 5.

The equal division of the Court of Appeals sent the case to this Court.

2. (a) The exclusive remedy provision of the Workers' Compensation Act says, in relevant part:

> The rights and the remedies granted to an employee by this chapter [i.e., the Act] shall exclude all other rights and remedies of such employee ... at common law or otherwise, on account of such injury, loss of service, or death; provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer ....

OCGA § 34-9-11 (a). Among the rights and remedies granted to an employee like Smith by the Act is the option to obtain compensation for an alleged work-related injury through a Board-approved settlement. See OCGA § 34-9-15.[2] The interplay of OCGA §§ 34-9-11 (a)

---

[2] OCGA § 34-9-15 provides in full that:
(a) Nothing contained in this chapter shall be construed so as to prevent settlements made by and between the employee and employer but rather to encourage them, so long as the amount of compensation and the time and manner

and 34-9-15 (b), which this Court has not previously addressed, is informed by how we and the Court of Appeals have interpreted the interplay between the exclusive remedy provision and subsection (a) of OCGA § 34-9-15.

(b) It is well established that a settlement under OCGA § 34-9-15 (a) which requires an employer to compensate its employee for an alleged injury bars a subsequent tort suit by the employee against anyone protected by the exclusive remedy provision, regardless of the actual circumstances of the employee's injury and the amount of

---

of payment are in accordance with this chapter. A workers' compensation insurer shall not be authorized to settle a claim on behalf of its insured employer without giving prior notice to such employer of the terms of the settlement agreement. A copy of any such settlement agreement shall be filed by the employer with the board, and no such settlement shall be binding until approved by the board. Whenever it shall appear to the board, by stipulation of the parties or otherwise, that there is a bona fide dispute as to facts, the determination of which will materially affect the right of the employee or dependent to recover compensation or the amount of compensation to be recovered, or that there is a genuine dispute as to the applicability of this chapter, and it further appears that the parties have agreed upon a settlement between themselves, which settlement gives due regard and weight to the conflicting evidence available relating to the disputed facts or to the questions as to the applicability of this chapter, then, upon such determination, the board shall approve the settlement and enter an award conforming to the terms thereof even though such settlement may provide for the payment of compensation in a sum or sums less than would be payable if there were no conflict as to the employee's right to recover compensation. When such settlement has been agreed upon and approved by the board, it shall constitute a complete and final disposition of all claims on account of the incident, injury, or injuries referred to therein, and the board shall not be authorized to enter upon any award subsequent to such board approval amending, modifying, or changing in any manner the settlement, nor shall the settlement be subject to review by the board under Code Section 34-9-104.

(b) The board shall be authorized to approve a stipulated settlement between the parties which concludes that there is no liability under this chapter and to retain jurisdiction to enforce any agreement which resolves, in whole or in part, a claim filed with the board. If payments required under such an agreement are not made within 20 days, the board may assess a penalty of 20 percent in the same manner as provided in Code Section 34-9-221. When such settlement has been agreed upon and approved by the board, it shall constitute a complete and final disposition of all claims on account of the incident, injury, or injuries referred to therein, and the board shall not be authorized to enter upon any award subsequent to such board approval amending, modifying, or changing in any manner the settlement, nor shall the settlement be subject to review by the board under Code Section 34-9-104.

(c) The board or any party to the settlement agreement may require that the settlement documents contain language which prorates the lump sum settlement over the life expectancy of the injured worker. When such an agreement has been approved, neither the weekly compensation rate paid throughout the case nor the maximum statutory weekly rate applicable to the injury shall apply. No compensation rate shall exceed the maximum statutory weekly rate as of the date of injury. Instead, the prorated rate set forth in the approved settlement documents shall control and become the rate for that case. This subsection shall be retroactive in effect.

compensation to which the parties agreed. See *Haygood v. Home Transp. Co.*, 244 Ga. 165, 166-167 (259 SE2d 429) (1979) (holding that the exclusive remedy provision barred a tort lawsuit against the plaintiff's employer because the plaintiff had previously entered a Board-approved settlement with the employer for the same injury); *Thorn v. Phillips*, 164 Ga. App. 47, 48 (296 SE2d 251) (1982) ("[T]he plaintiffs, having affirmatively obtained benefits [from the employer] under the Workers' Compensation Act, are barred from bringing a tort action against a fellow employee."). See also OCGA § 34-9-15 (a) ("[T]he [B]oard shall approve the settlement . . . even though such settlement may provide for the payment of compensation in a sum or sums less than would be payable if there were no conflict as to the employee's right to recover compensation."). Put simply, an injured employee may not conclude a settlement with his employer to recover compensation under the Act, obtain the Board's approval of the settlement, and then turn around and sue the employer or "an employee of the same employer" by alleging that his injury was not actually compensable under the Act. See *Thorn*, 164 Ga. App. at 48 (explaining that a plaintiff may not adopt in later litigation a "position diametrically contradictory to that taken before the Board" and which "would have precluded him from any recovery under the Workers' Compensation Act").

The precedent accords with the clear terms of OCGA § 34-9-11 (a): once an employee settles under OCGA § 34-9-15 (a), he has exercised one of "the rights and remedies granted to an employee" by the Act and therefore is barred from pursuing a claim for the same injury against anyone except a "third-party tort-feasor, other than an employee of the same employer." The rule also reflects OCGA § 34-9-15 (a)'s similar command that "[w]hen such settlement has been agreed upon and approved by the board, it shall constitute a complete and final disposition of all claims on account of the incident, injury, or injuries referred to therein." Thus, when an employee invokes the right and receives the remedy afforded by OCGA § 34-9-15 (a), §§ 34-9-11 (a) and 34-9-15 (a) prohibit any subsequent attempt by the employee to recover again for the same injury, except against a third-party tort-feasor other than an employee of the same employer.

(c) Before 2000, there was apparently some uncertainty as to whether the Board could approve so-called "no liability" settlements, although the Board had already been doing so. See Lisa Kabula, Labor and Industrial Relations: Workers' Compensation: Amend Certain Provisions, 17 Ga. St. U. L. Rev. 231, 234, n. 32 (2000). That July, the General Assembly added subsection (b) to OCGA § 34-9-15,

see Ga. L. 2000, p. 1321, which expressly authorizes the Board to approve settlement agreements which stipulate that there is no liability under the Act.

Two years later in *Ridley*, the Court of Appeals held that a settlement under OCGA § 34-9-15 (b) that compensates the employee for his injury has the same effect as a settlement that provides for payment under OCGA § 34-9-15 (a). See *Ridley*, 256 Ga. App. at 689. That holding was correct. Just like OCGA § 34-9-15 (a), OCGA § 34-9-15 (b) grants the employee a right and remedy under the Act. And just like OCGA § 34-9-15 (a), OCGA § 34-9-15 (b) says that "[w]hen such settlement has been agreed upon and approved by the board, it shall constitute a complete and final disposition of all claims on account of the incident, injury, or injuries referred to therein." Thus, the provisions of the Act that preclude an employee who settles under OCGA § 34-9-15 (a) from seeking a second remedy for the same injury apply with equal force to settlements under OCGA § 34-9-15 (b).

(d) Smith and Presiding Judge Barnes's opinion argue that Smith's negligence action against Ellis should not be barred because it did not, in their view, arise out of and in the course of Smith's employment and therefore was not an "injury" within the scope of the exclusive remedy provision. See *Smith*, slip op. at 8 (opinion of Barnes, P. J.). But redetermination of this issue is precisely what is precluded by OCGA §§ 34-9-11, 34-9-15, and the precedent correctly interpreting those provisions. An employee may not file a workers' compensation claim against his employer alleging that he has suffered a compensable injury; reach a settlement with the employer to obtain compensation; avail himself of the right and remedy granted by the Act to seek and obtain the Board's approval of the settlement, thereby resolving the case; and then turn around and sue the employer (or "an employee of the same employer") now alleging that the injury was not compensable, hoping that the court will disregard the prior resolution of the case, deem the injury not compensable under the Act, and allow a second recovery.

The Act's preclusion of such inconsistent, follow-on litigation does not depend on whether the employer admits liability in the settlement, which is not mandated by OCGA § 34-9-15 (a) or (b). Nor does it depend on the Board's stating that, if the case were fully adjudicated, the Board would find liability or award the amount of compensation due if the employer did not dispute liability. See OCGA § 34-9-15 (a) (authorizing the Board to approve settlements when "there is a genuine dispute as to the applicability" of the Act and where the settlement "provide[s] for the payment of compensation in a sum or sums less than would be payable if there were no conflict as

to the employee's right to recover compensation"). Instead, preclusion results from the employee's having exercised a right and received a remedy under the Act on account of an injury that he contended was compensable because it arose out of and in the course of his employment. See, e.g., *Thorn,* 164 Ga. App. at 48 ("[T]he plaintiffs, having affirmatively obtained benefits under the Workers' Compensation Act, are barred from bringing a tort action against a fellow employee."); *Bishop v. Weems,* 118 Ga. App. 180, 181 (162 SE2d 879) (1968) ("If there were an award of compensation it would, of course, be an adjudication of coverage and consequently a bar to a common law action.").

Settlements approved by the Board under OCGA § 34-9-15 (a) and (b) are no less rights and remedies granted by the Act than are awards entered after full adjudication, with its attendant costs and delays. And the preclusive effect of a Board-approved settlement under OCGA § 34-9-15 (a) or (b) plainly does not depend on a determination of the employer's actual liability for the injury at issue, since both subsections direct that "[w]hen such settlement has been agreed upon and approved by the board, it shall constitute a complete and final disposition of all claims on account of the incident, injury, or injuries referred to therein."

(e) Because Smith settled his workers' compensation injury claim against his employer under OCGA § 34-9-15 (b), he is barred from bringing an action on account of the same injury against anyone except a "third-party tort-feasor, other than an employee of the same employer." OCGA § 34-9-11 (a). The contrary view expressed in Presiding Judge Barnes's opinion is erroneous.

3. That holding, however, does not fully resolve this appeal. Smith also argues that, even under *Ridley,* his lawsuit against Ellis is not barred by the exclusive remedy provision because Ellis was not acting in his capacity as a fellow employee of The Knight Group when he injured Smith. In other words, Smith says Ellis should be deemed a "third-party tort-feasor" rather than an "employee of the same employer." OCGA § 34-9-11 (a). Indeed, in both the trial court and the Court of Appeals, Smith sought to distinguish *Ridley* in this way, rather than arguing that the case should be overruled. See *Smith,* slip op. at 1, n. 1 (opinion of Andrews, J.). The Court of Appeals, however, focused on whether *Ridley* should be overruled, with neither opinion squarely addressing this subsidiary issue. We believe Smith's argument has merit.

(a) If the phrase were read in isolation, we could say that Ellis was an "employee of the same employer" as Smith. In construing statutes, however, we do not read words in isolation, but rather in context. See *Brown v. State,* 290 Ga. 865, 868 (725 SE2d 320) (2012)

(explaining that "words often gain meaning from context"). See also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012) ("The subject matter of the document . . . is the context that helps to give words meaning — that might cause *draft* to mean a bank note rather than a breeze." (emphasis in original)). In the context of workers' compensation — compensation paid by employers to employees for injuries related to employment — the phrase "employee of the same employer" is most naturally read to mean a person who is acting as an employee rather than as a third party to the employment relationship at the time of the injury in question.

Unlike the argument addressed in Division 2 (d) above, Smith's contention that Ellis was not acting as a co-employee when the injury occurred does not contradict the position Smith took before the Workers' Compensation Board and does not raise the res judicata and estoppel concerns that animate OCGA §§ 34-9-11 and 34-9-15 and the precedent. In his settlement with The Knight Group, Smith contended that "while active in the course and scope of [his] employment, [he] sustained a compensable injury." Thus, he is barred from now claiming that his injury was not compensable, and he could not turn around and sue The Knight Group under that theory. See *Thorn*, 164 Ga. App. at 48 (explaining that a plaintiff may not adopt a "position diametrically contradictory to that taken before the Board"). However, the record gives no indication that Smith took a position in the workers' compensation proceeding about whether *Ellis* was acting in the course of *Ellis's* employment with The Knight Group when he shot Smith. Indeed, Ellis was not a party to the workers' compensation claim and settlement, and in the absence of any allegation that Ellis shot Smith willfully for personal reasons, see Division 3 (d) below, Ellis's employment status was immaterial to Smith's workers' compensation claim. Smith therefore is not precluded from arguing now that Ellis was acting as a third-party tort-feasor, rather than as a co-employee, when the injury occurred.

Taking the phrase "employee of the same employer" out of its statutory context would render all employees who work for the same employer immune from suit in cases far removed from their workplace and entirely unconnected to their employment or their employment-related dealings with fellow employees. As long as the plaintiff happened to be employed by the same employer and working at the time of the injury, it would make no difference whether the co-employee defendant was at work, off-duty, or even on vacation when the injury occurred. To use an example suggested by Smith at oral argument, if a UPS driver delivering packages in Atlanta was struck and injured by a car driven negligently by a UPS office clerk from Savannah, who

was driving her kids to a soccer tournament on a Saturday afternoon and thus undeniably off-duty and far removed from any employment responsibilities, the on-duty driver would be entitled to seek workers' compensation benefits from UPS. However, only by ripping the words of OCGA § 34-9-11 (a) from their workers' compensation context could it be said in these circumstances that the off-duty co-employee was functioning as an "employee of the same employer" rather than as a "third-party tort-feasor" when she caused the injury.

(b) As Smith points out, precedent from the Court of Appeals accords with this reading of OCGA § 34-9-11 (a). In *Crawford v. Meyer*, 195 Ga. App. 867 (395 SE2d 237) (1990), Crawford sued her co-employee, Meyer, for damages resulting from a car accident in their employer's parking lot. See id. at 867. Meyer had finished her shift and was pulling out of her parking space to drive home when she hit Crawford's car and injured Crawford, who was still working her shift. See id. Crawford filed a workers' compensation claim and received benefits from the employer. She then sued Meyer in tort, arguing that the action was not precluded by the Act's exclusive remedy provision because Meyer's shift was over when the accident occurred. See id.

The Court of Appeals held that Crawford's tort action was barred by the Act, but it did *not* do so simply by noting that the two women worked for the same employer, which was indisputable. Instead, the court examined whether Meyer was still acting " 'in the course of [her] employment' " when the accident occurred. *Crawford*, 195 Ga. App. at 867 (citation omitted). The court explained that the evidence Meyer offered in support of summary judgment showed that "although [she] was finished with her daily work shift, she was in a parking lot on her employer's premises and the accident occurred within a reasonable time for [her] egress from her workplace," and that Crawford's evidence "did not sufficiently rebut" those facts. Id. "Consequently" — that is, as a consequence of the conclusion that Meyer was acting in the course of her employment at the time she injured Crawford — the Court of Appeals held that Crawford's "exclusive remedy is pursuant to OCGA § 34-9-11 and the trial court did not err in granting [Meyer's] motion for summary judgment." Id.

Even where the plaintiff apparently did not first obtain workers' compensation benefits, the Court of Appeals has conducted a similar analysis. In *Stevenson v. Ray*, 282 Ga. App. 652 (640 SE2d 340) (2006), Stevenson and Ray both worked as deputy sheriffs for Laurens County. See id. at 653. As Ray was driving home in his "take-home" patrol car after his shift ended, he heard on his radio that other officers were engaged in a pursuit and asked the shift supervisor if he should join in. See id. The supervisor told Ray to go home, but after

one of the pursuing police cars passed Ray, he turned on his emergency lights and siren and followed. Shortly thereafter, Ray's car collided with Stevenson's patrol car, injuring Stevenson. See id. It was undisputed that Stevenson was on duty. See id. at 654, n. 5.

Stevenson (and his wife) sued Ray in tort, and Ray moved for summary judgment, arguing that the action was barred by the exclusive remedy provision, even though the opinion does not mention a prior workers' compensation claim or award. *Stevenson*, 282 Ga. App. at 654. Stevenson responded that "because Ray was off-duty and had been advised by the shift supervisor not to respond to the incident, the collision between Ray and Stevenson did not arise out of and in the course of Ray's employment." Id. at 654. Again, the Court of Appeals did not grant summary judgment to Ray simply because the employees shared the same employer in a broad sense. As in *Crawford*, the court examined whether the plaintiff employee's injury occurred in the course of the defendant employee's employment. The Court of Appeals explained that "police officers are considered to act within the course of their employment when they are on duty or on call" and concluded, "Although Ray was off-duty at the time of the collision, he was on call. Accordingly, Ray was in the course of his employment at the time of Stevenson's injury." *Stevenson*, 282 Ga. App. at 654 (citation and punctuation omitted). Ray was therefore entitled to summary judgment. See id. at 655.

*Ridley* is not to the contrary, even though at one point in that case the Court of Appeals said broadly that "OCGA § 34-9-11 bars tort suits against an employer or its employees following a workers' compensation settlement." 256 Ga. App. at 688. In *Ridley*, the plaintiff employee and the defendant co-employee were doing the same thing when the injury occurred. See id. at 686 ("Ridley was injured in an automobile collision while riding in a car driven by her [defendant] co-worker."). It was undisputed that, to the extent the plaintiff employee was acting in the course of her employment when the injury occurred, so too was the defendant co-employee, who was therefore acting as an "employee of the same employer" rather than as a "third-party tort-feasor" at the relevant time. See id. at 686. The facts in *Ridley* did not require the Court of Appeals to address the meaning of the phrase "employee of the same employer," and thus the court did not discuss that language or its previous application in *Crawford*.

The same may be true in many cases where an injured employee who has resolved a workers' compensation claim against his employer then sues a co-employee for negligently causing the injury. Once the injured employee's work status is established, it will often be obvious and undisputed that the defendant employee was also acting in the course of his employment. See, e.g., *Clark v. Williamson*, 206 Ga. App.

329, 330-332 (425 SE2d 311) (1992) (where the car driven by the defendant employee, in which the plaintiff co-employee was a passenger, collided with another vehicle, it was undisputed that the parties "were both acting within the scope of their employment," and the exclusive remedy provision barred the tort action); *Sargent v. Blankmann*, 202 Ga. App. 156, 156-157 (413 SE2d 495) (1991) (same). In *Crawford* and *Stevenson*, however, the issue was not so obvious, and in fact was squarely disputed. That is the situation in this case as well.

(c) Other courts interpreting similar statutory language have similarly held that fellow employees are not protected by the exclusive remedy provision unless they were acting in the course of their employment when they injured their co-worker. As the Delaware Supreme Court explained:

> There is uniformity of opinion that a "person in the same employ" means a person employed by the same employer and acting in the course of his employment at the time of the injury to the co-employee. It is agreed that the statutory language requires more than an employer in common without regard for the time, place, or circumstances of the accident; and that it encompasses more than acts within the scope of the offending employee's regular duties.

*Groves v. Marvel*, 213 A2d 853, 855 (Del. 1965) (citing cases from Michigan, New York, and New Jersey and 2 Larson's Workmen's Compensation Law, § 72.20). The current edition of the leading treatise on workers' compensation law cited by *Groves* now states flatly that "immunity attaches to the coemployee only when the coemployee is acting in the course of employment." 6 Lex K. Larson, Larson's Workers' Compensation Law § 111.03[3] (rev. ed. 2012) (citing cases from more than 30 states, with only a Wyoming court reaching a contrary result).

(d) In response, Ellis notes only that co-employees who commit intentional torts may be protected by the exclusive remedy provision, see *Heard v. Mitchell's Formal Wear*, 249 Ga. App. 492, 493 (549 SE2d 149) (2001), and argues that merely negligent co-workers must be similarly protected. But this argument misses the point. If the victim is a co-employee, the Workers' Compensation Act may protect employees who commit torts of all varieties in the course of their employment. The question here is whether the Act protects an employee tort-feasor when the tort is committed *outside* the course of the tort-feasor's employment. That was not the situation in *Heard*. See 249 Ga. App. at 494 (explaining that the co-employee's actions "were

directed at Heard because of a work-related activity, occurring during working hours and arising from the performance of both Heard's and [the co-employee's] duties"). Indeed, the Act expressly excludes from coverage "injury caused by the willful act of a third person directed against an employee for reasons personal to such employee," OCGA § 34-9-1 (4) — including where the intentional tort-feasor is a fellow employee acting for personal reasons rather than in the course of his employment, see *Kight v. Liberty Mut. Ins. Co.*, 141 Ga. App. 409, 410-411 (233 SE2d 453) (1977).

(e) Summary judgment is proper only when the non-moving party fails to raise a genuine issue of material fact, even when construing the evidence in that party's favor. See OCGA § 9-11-56 (c); *Kaplan*, 286 Ga. at 560. For the reasons just discussed, the trial court erred in ruling that Ellis is entitled to summary judgment simply because Smith settled a workers' compensation claim with his employer and Ellis worked for the same company. See *Crawford*, 195 Ga. App. at 867. But summary judgment for Ellis would still be proper if the evidence showed, without genuine dispute, that Ellis was acting in the course of his employment when he injured Smith. See id.

It is clear, however, that Smith has pointed to sufficient evidence in the record that shows there is a genuine dispute about that issue. Unlike Smith, who was injured while in the subdivision where he was assigned, had been doing his job, and was still engaged in organizing his work tools next to his truck, Ellis had come that day to a different subdivision in a different city to borrow a tool for personal use and to shoot his new guns. Ellis had worked little if at all that morning, and after lunch he did no work and actually hid his presence from a supervisor. Moreover, Ellis injured Smith during an activity their employer did not condone, much less direct.[3]

Accordingly, the trial court's judgment granting summary judgment to Ellis is reversed, and the case is remanded to the Court of Appeals with direction that it be remanded to the trial court for further proceedings consistent with this opinion.

---

[3] The trial court did not address the evidence regarding whether Ellis was acting in the course of his employment when he injured Smith, instead noting that "[t]he exclusive remedy applies to injuries caused by all 'co-employees, regardless of their position, skills, or responsibilities.'" (Quoting *Rheem Mfg. Co. v. Butts*, 292 Ga. App. 523, 524 (664 SE2d 878) (2008)). That is true, but it misses the point. The issue is not what type of position Ellis held at The Knight Group, but rather whether Ellis was acting as any sort of employee of the company at the time of the shooting.

*Issue on which the Court of Appeals was equally divided resolved and case remanded with direction. Hunstein, C. J., Thompson, P. J., Benham, Hines, Melton, JJ., and Judge Kelly A. Lee concur. Blackwell, J., disqualified.*

DECIDED SEPTEMBER 10, 2012.

*Mitchell & Shapiro, Richard C. Mitchell,* for appellants.
*Carlock, Copeland & Stair, Jeremy R. Davis, Scott D. Huray, Christopher A. Whitlock,* for appellee.