**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 17, 2025**

# In the Court of Appeals of Georgia

A25A1020. PIERRE v. MICRO-JA/X, LLC et al.

BARNES, Presiding Judge.

An employee of A&J Security Services, LLC ("A & J") accidentally shot plaintiff Tanetta Jean Pierre's son Shamel Kelly as he was inquiring about a job with A & J at the apartment complex where A & J and other defendants provided security services. As a dependent of Kelly, Pierre sought benefits from the State Board of Workers' Compensation ("the Board"), which eventually approved a settlement as to her claim brought under the Workers' Compensation Act ("the Act"). Pierre also filed a wrongful death and tort action against the defendants. A trial court later granted defendants' motion to dismiss on the ground that the Act's exclusivity provisions barred any further recovery by plaintiff herself. On appeal, plaintiff argues

that the grant of the motion was erroneous because the settlement preserved her right to pursue tort remedies in addition to the claim she brought and settled under the Act. We agree and reverse.

1. As a preliminary matter, we consider our standard of review. Ordinarily, on review from the grant of a motion to dismiss a tort complaint, we would "determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." (Citation and punctuation omitted.) *Chandler v. Opensided MRI of Atlanta*, 299 Ga. App. 145, 145 (1) (682 SE2d 165) (2009). It appears from the record, however, that the trial court considered evidence outside the pleadings – specifically, the Board-approved settlement of plaintiff's workers' compensation claim – when, after a hearing held more than 30 days after the filing of defendants' motion to dimiss, it granted that motion.[1] Plaintiff has not objected, either below or on appeal, to defendants' submission of the settlement as evidence. In fact, plaintiff conceded below that the trial court's consideration of evidence had the effect of converting the

---

[1] See OCGA § 9-11-56 (c) (a motion for summary judgment "shall be served at least 30 days before the time fixed for the hearing").

2

proceeding into one on summary judgment and continues to cite her own release attached to that settlement in her arguments on appeal.

Under these circumstances, plaintiff "acquiesced in [d]efendants' submission of evidence in support of their motion to dismiss[.]" *Cox Enterprises v. Nix*, 273 Ga. 152, 153 (538 SE2d 449) (2000). And where, as here, "both parties submit evidence in connection with a motion to dismiss for failure to state a claim, there is no indication of prejudice due to the trial court's failure to give notice of the actual nature of the pending action." (Citation and punctuation omitted.) Id. We therefore proceed under the familiar summary judgment standard, "view[ing] the evidence and mak[ing] all reasonable inferences from it in the light most favorable to the non-moving party." (Citation omitted.) *Smith v. Ellis*, 291 Ga. 566, 567 (1) (731 SE2d 731) (2012) (reviewing an appeal from a grant of summary judgment on the ground that the Act's exclusive remedy provision barred an independent tort action).

Thus viewed in favor of plaintiff, the record shows that on April 4, 2021, Kelly was "shadowing" a security guard at the Park 35 Apartments in Decatur for the purposes of getting a job there when a second security guard took Kelly's own handgun and accidentally shot Kelly, who died of his wounds. The security guard was

acting within the scope of his employment when the accident occurred. Pierre filed this wrongful death and tort action on March 31, 2023, with defendants served in April 2023. The complaint alleged that the defendants are liable under theories of negligence, premises liability, respondeat superior, and agency.

In the meantime, on April 6, 2023, the parties to Pierre's workers compensation claim reached a so-called "no-liability" settlement[2] under which defendants agreed to pay plaintiff $50,000 to settle that claim. The settlement stipulated that Kelly "was not an employee [of]" and "did not work for" A&J, and also stated that the settlement "is entered into *solely* under the provisions of the Georgia Workers' Compensation Act and is intended to constitute a complete and final disposition of *all claims* on account of the accident or injuries *which are the basis of this workers' compensation claim,* upon approval by the [Board]." (Emphasis supplied.) Counsel for plaintiff in the workers' compensation action later averred that the parties agreed to strike the words "employer" or "alleged employer" in four different places in the settlement, as well as seven references to Kelly as an "employee" or "alleged employee."

---

[2] See OCGA § 34-9-15 (b) (quoted below).

On the same day, executed with the same Docu-Sign number, and submitted to the Board simultaneously with the settlement, plaintiff signed a "General Workers Compensation Release" stating that she was waiving her right to pursue a remedy "with regard *only* to the workers' compensation claim" against defendants. (Emphasis supplied.) The release also specified that plaintiff "does not agree to waive any claim or action regarding [Kelly's] *wrongful death or tortious injury* or *any other potential claim not related* to the Workers' Compensation claim[.]" (Emphasis supplied.) The release added that "[a]ny language in this agreement that conflicts with this non-waiver of the wrongful death claim is hereby stricken because it was not the intention of the parties."

On May 16, 2023, the Board approved the settlement. When plaintiff moved for reconsideration to clarify her intention in the release, A&J's response included the statement that "the plain and unambiguous language in the General Release reflects the agreement [that plaintiff] did not agree to waive any claim or action regarding [her] wrongful death or tortious injury [or] any other potential claims not related to the Workers' Compensation claim[.]" The Board eventually denied plaintiff's motion for reconsideration as untimely.

In the meantime, however, in June 2023, defendants filed a motion to dismiss or for judgment on the pleadings in plaintiff's wrongful death and tort action, attaching the Board-approved settlement and arguing that the Act's exclusivity provisions barred recovery under any tort theory. In August 2024, almost a year after a hearing, the trial court dismissed plaintiff's "individual" tort claims, holding that "the Board approved the . . . Settlement and the . . . Release" and that "[d]espite the language in the Release, any settlement under the Act is the exclusive remedy for recovery."[3] The trial court later entered final judgment as to those claims and found "no just reason for delay" as required by OCGA § 9-11-54 (b). This appeal followed.

2. Plaintiff argues that the Act does not require the dismissal of her individual tort claims, including her wrongful death claim, but actually authorizes them.

The Act's exclusivity provision, OCGA § 34-9-11 (a), provides in relevant part:

> The rights and the remedies granted to *an employee* by this chapter shall exclude and be in place of all other rights and remedies of such employee, his or her personal representative, parents, dependents, or next of kin, and all other civil liabilities whatsoever at common law or

---

[3] The trial court noted, however, that it was not dismissing the claims of Kelly's estate against the defendants. No cross-appeal has been taken concerning the remaining claims of the estate.

otherwise, on account of such injury, loss of service, or death; *provided, however, that the employer may be liable to the employee for rights and remedies beyond those provided in this chapter by expressly agreeing in writing to specific additional rights and remedies* [.]

(Emphasis supplied.) As the Supreme Court of Georgia has explained, "preclusion [of a tort claim under OCGA § 34-9-11 (a)] results from the employee's having exercised a right and received a remedy under the Act on account of an injury that he contended was compensable because it arose out of and in the course of his employment." *Smith*, 291 Ga. at 573 (2) (d).

OCGA § 34-9-15 (b) authorizes the Board to approve non-liability settlements as follows:

> The board shall be authorized to approve a *stipulated settlement between the parties* which concludes that there is *no liability* under this chapter and to retain jurisdiction to enforce any agreement which resolves, in whole or in part, *a claim filed with the board*. . . . When such settlement has been agreed upon and approved by the board, it shall constitute a complete and *final disposition of all claims* on account of the incident, injury, or injuries referred to therein, and the board shall not be authorized to enter upon any award subsequent to such board approval amending, modifying, or changing in any manner the settlement, nor shall the settlement be subject to review by the board under Code Section 34-9-104.

(Emphasis supplied.) See also *Smith*, 291 Ga. at 572 (2) (d) (an employee may not reach a workers' compensation settlement with his employer and than "turn around and sue the employer (or an employee of the same employer) now alleging that the injury was not compensable"); *Ridley v. Monroe*, 256 Ga. App. 686, 689 (569 SE2d 561) (2002) ("merely … incorporating [OCGA § 34-9-15 (b)'s] 'no liability' language into the boilerplate" of a workers' compensation settlement agreement does not take that settlement beyond the purview of the Act).

On its face, OCGA § 34-9-15 (b) concerns only settlements of a "claim" or "claims" "filed with the board" – that is, workers' compensation claims – and has no bearing on causes of action other than those between the same employee and employer settling the workers' compensation claim. See, e.g., *Smith*, 291 Ga. at 578 (3) (e) (reversing a grant of summary judgment to defendant employer when a genuine question of fact remains as to whether the tortfeasor was acting in the course of his employment when he injured the plaintiff). It is undisputed that Kelly was never an employee of defendants, and the parties' only relationship outside of this litigation is as claimant and defendant in a workers' compensation claim. The only question before us, then, is whether the parties "expressly agree[d] in writing to specific additional

rights and remedies," OCGA § 34-9-11 (a), in which case their settlement of plaintiff's workers' compensation claim does not have preclusive effect.

"In cases of contemporaneous agreements between the same parties with relation to the same subject matter, each writing may be used to ascertain the true intention of parties and may authorize a determination that, when construed together, they constitute as a whole, but one contract." *SR Business Svcs. v. Bryant*, 267 Ga. App. 591, 593 (600 SE2d 610) (2004); see also *Harris v. Distinctive Builders*, 249 Ga. App. 686 (549 SE2d 498) (2001) ("contemporaneous writings should be considered even if one of the writings purports to contain the entire understanding of the parties hereto with respect to the transactions contemplated hereby and even if the writings are not cross-referenced") (citation and punctuation omitted).

Here, the parties "expressly agree[d] in writing to specific additional rights and remedies," OCGA § 34-9-11 (a) – that is, as the release stated, to preserve "any claim or action regarding [Kelly's] *wrongful death or tortious injury* or any other potential claim *not* related to the Workers' Compensation claim[.]" (Emphasis supplied.) Further, A & J admitted below that plaintiff's release demonstrates the parties' intent to preserve her right to pursue wrongful death and other tort claims, as distinct from

her workers' compensation claim. The fact that A & J has now taken the opposite position does not preclude us from crediting this previous admission for purposes of summary judgment. See *Georgia Pacific v. Fields*, 293 Ga. 499, 502 (1) (748 SE2d 407) (2013) (amended complaint omitting reference to nonparty entities did not preclude other party from relying on the prior admissions of fact in judicio as an admission against interest; even when a pleading has been stricken, "the admission contained therein remains to be utilized as evidence of fact which the admitting party can explain but may be unable to conclusively refute"); *Richmond County v. Sibert*, 218 Ga. 209, 212 (1) (a) (126 SE2d 761) (1962).

On this record, the trial court erred when it granted defendants' motion to dismiss, which was in effect a grant of summary judgment, because some evidence shows that the parties intended to preserve plaintiff's own wrongful death and tort remedies as authorized by OCGA § 34-9-11 (a).

*Judgment reversed. Brown, C. J., and Watkins, J., concur.*