In the Supreme Court of Georgia


Decided:   Novemberr 23, 2015


S15A0840.  IN THE INTEREST OF M.F., A CHILD.


BLACKWELL, Justice.

In January 2012, the Juvenile Court of Douglas County put M.F. under a

permanent guardianship, finding that the young girl was deprived as a result of

problems that both of her parents had with substance abuse.[1,2] A little more than

---

[1] M.F. was born in May 2008 to unmarried parents, but her relationship with her father was legitimated in January 2011. Although the guardians were awarded custody of M.F. in January 2012, her father enjoyed certain visitation rights under the order of permanent guardianship.

[2] In January 2012, our law defined a "deprived child" as a child who:
(A) Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals;
(B) Has been placed for care or adoption in violation of law;
(C) Has been abandoned by his or her parents or other legal custodian; or
(D) Is without a parent, guardian, or custodian.
Former OCGA § 15-11-2 (8) (2012). Our Juvenile Code, however, was substantially revised in 2013. See generally Ga. L. 2013, p. 294. Today, the law no longer speaks of a "deprived child," but instead refers to a "dependent child," which is defined as a child who:
(A) Has been abused or neglected and is in need of the protection of the court;
(B) Has been placed for care or adoption in violation of law; or
(C) Is without his or her parent, guardian, or legal custodian.
OCGA § 15-11-2 (22). To the extent that there is a meaningful distinction between a "deprived child" under the old Juvenile Code and a "dependent child" under the new Code, it is an unimportant distinction for the purposes of this case. The parties do not dispute that the circumstances that led the Douglas County court in 2012 to find that M.F. was a

two years later, her father filed a petition in the Superior Court of Gwinnett County, alleging that M.F. and her guardians are residents of Gwinnett County, that the Gwinnett County court, therefore, has jurisdiction of matters involving the custody of M.F., that the father has resolved his problems with substance abuse, that he now is a fit parent, and that he ought to have custody of his daughter. Although the petition was denominated a "complaint for custody," the Gwinnett County court construed it as a petition to modify, vacate, or revoke the guardianship pursuant to OCGA § 15-11-244. As such, the Gwinnett County court concluded that the Juvenile Court of Douglas County properly had jurisdiction of the petition, and it transferred the petition to Douglas County. There, the guardians filed a motion to dismiss the petition, contending that it failed to state a claim upon which relief could be granted because, they argued, a change in the circumstances of a parent is no basis for a modification, vacatur, or revocation of a permanent guardianship. The Juvenile Court of Douglas

"deprived child" would permit a court today to find M.F. — if, of course, she were in the same circumstances — to be a "dependent child." In this opinion, we use "deprived" with reference to the old Juvenile Code and the January 2012 order of permanent guardianship, and we use "dependent" with reference to the new Juvenile Code.

2

County granted the motion to dismiss, and the father appeals.[3] We affirm in part and reverse in part.

1. To begin, the father claims that his petition was properly filed in Gwinnett County and that the transfer of his petition to Douglas County was in error. We disagree. It is true, as the father notes, that superior courts generally have original jurisdiction of petitions for the permanent custody of a child. See Ertter v. Dunbar, 292 Ga. 103, 104-105 (734 SE2d 403) (2012). Nevertheless, juvenile courts have original jurisdiction of proceedings under OCGA § 15-11-240 et seq. for permanent guardianships. See OCGA § 15-11-10 (3) (B) (juvenile court "shall be the sole court for initiating action . . . [i]nvolving any proceedings . . . [f]or permanent guardianship brought pursuant to the provisions of Article 3 of this chapter"); OCGA § 15-11-240 (a) ("the juvenile court shall

_____

[3] In response to the motion to dismiss, the father asserted that, if OCGA § 15-11-244 does not authorize a modification, vacatur, or revocation of a permanent guardianship in the circumstances that he alleges, the statute is unconstitutional. When the juvenile court granted the motion, it necessarily rejected this assertion. On appeal, the father continues to assert that the statute is, if it means what the juvenile court understood it to mean, unconstitutional. We understand the statute differently, see Division 2 infra, and so, we do not reach the constitutional question. We nevertheless note the constitutional question because it forms the basis for our jurisdiction in this appeal. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1).

be vested with jurisdiction to appoint a permanent guardian for a child adjudicated as a dependent child in accordance with this article").[4]

When a juvenile court enters an order of permanent guardianship, it "shall retain jurisdiction over [the] guardianship action . . . for the sole purpose of entering an order following the filing of a petition to modify, vacate, or revoke

---

[4] As we noted earlier, our Juvenile Code was substantially revised in 2013. See note 2 supra. The new Juvenile Code applies, however, only to "juvenile proceedings commenced on and after [January 1, 2014]." Ga. L. 2013, pp. 294, 514 § 5-1. Here, we are confronted with an order of permanent guardianship entered under the old Juvenile Code and a petition to modify, vacate, or revoke the permanent guardianship that was filed after January 1, 2014. We have compared the relevant provisions of the old Juvenile Code and the new Juvenile Code, and they are, for the most part, substantially identical. Compare OCGA § 15-11-240 et seq. with former OCGA § 15-11-30.1 (a) (2). See also Jason Carruthers & Jessica Sully, Note, Peach Sheets, Courts: Juvenile Justice Reform, 30 Ga. St. U. L. Rev. 63 (2013) (comparing old Juvenile Code and new Juvenile Code, but identifying no differences in permanent guardianship provisions). Perhaps for this reason, the juvenile court cited the new Juvenile Code throughout its order on the motion to dismiss without explicitly considering whether the new Juvenile Code applies, and the parties on appeal likewise cite provisions of the new Juvenile Code. In this opinion, we will cite the relevant provisions of the new Juvenile Code in the body of the opinion, and we will note parallel provisions of the old Juvenile Code in footnotes. We do not, however, decide which version of the Juvenile Code applies in this case. The parties have not briefed that issue, and we need not decide it, inasmuch as the relevant provisions of law are the same under both versions.

As under the new Juvenile Code, juvenile courts had original jurisdiction of proceedings for the appointment of permanent guardians under the old Juvenile Code. See former OCGA § 15-11-30.1 (a) (2) (A) (2012) ("[T]he juvenile court shall be vested with jurisdiction to appoint a permanent guardian for a child whose custody is a subject of controversy before the court as a result of an adjudication that the child is deprived . . . .").

4

the guardianship and appoint a new guardian." OCGA § 15-11-244 (a).[5] The

superior courts have concurrent jurisdiction over permanent guardianships, but

only with respect to the "enforcement or modification of any child support or

visitation order entered [in connection with the permanent guardianship]."

OCGA § 15-11-244 (b).[6] And for so long as an order of permanent guardianship

remains effective, permanent custody of the child is committed to the permanent

guardian as a matter of law. See OCGA § 15-11-242 (b) ("A permanent

guardian shall have the rights and duties of a permanent guardian as provided

in . . . [OCGA §] 29-2-22 . . . ."); OCGA § 29-2-22 (a) (1) (guardian has "the

exclusive power" to "[t]ake custody of the person of the minor").[7] Accordingly,

a superior court has no authority to award permanent custody of a child under

_____

[5] The same was true under the old Juvenile Code. See former OCGA § 15-11-30.1 (a) (2) (D) (2012) ("The court shall retain jurisdiction over a guardianship action under this paragraph for the sole purpose of entering an order following the filing of a petition to modify, vacate, or revoke the guardianship and to appoint a new guardian.").

[6] That too was true under the old Juvenile Code. See former OCGA § 15-11-30.1 (a) (2) (D) (2012) ("The superior courts shall have concurrent jurisdiction for enforcement or modification of any child support or visitation order entered pursuant to this Code section.").

[7] A permanent guardian had the same powers under the old Juvenile Code. See former OCGA § 15-11-30.1 (a) (2) (G) (2012) ("A guardian of the person of a child appointed under this paragraph shall have the rights and duties of a permanent guardian as are provided in [OCGA §] 29-2-22 . . . .").

5

a permanent guardianship to anyone other than a guardian, and to secure the permanent custody of such a child, anyone other than a guardian generally must first petition the juvenile court to modify, vacate, or revoke the guardianship.

The "complaint for custody" that the father filed in Gwinnett County fairly can be read as a petition to modify, vacate, or revoke the permanent guardianship,[8] see Kuriatnyk v. Kuriatnyk, 286 Ga. 589, 589-590 (690 SE2d 397) (2010) ("substance, rather than nomenclature, governs pleadings" (citations and punctuation omitted)), a petition over which the Juvenile Court of Douglas County would have exclusive jurisdiction. Cf. In re M.C.J., 271 Ga. 546, 548 (523 SE2d 6) (1999) ("If it appears from an analysis of the pleading that it is actually a disguised custody matter [rather than a deprivation proceeding], then it is outside the subject matter jurisdiction of the juvenile courts."). For this reason, the transfer of the petition to Douglas County was no error. See Ga.

---

[8] In his "complaint for custody," the father acknowledged the order of permanent guardianship, complained about his limited rights under that order, alleged that his circumstances had changed since the order was entered, asserted that he now "is a fit and proper parent is able to assume the responsibilities of full custody of [M.F.]," and alleged that it is in the best interest of M.F. to be in the custody of her father. See OCGA § 15-11-244 (c) (providing that certain changed circumstances can form the basis for a modification, vacatur, or revocation of a permanent guardianship). See also former OCGA § 15-11-30.1 (a) (2) (D) (2012) (same).

6

Const. of 1983, Art. VI, Sec. I, Par. VIII ("Any court shall transfer to the appropriate court in the state any civil case in which it determines that jurisdiction or venue lies elsewhere."). We, therefore, affirm the transfer of the petition from Gwinnett County to Douglas County.

2. Even if the Douglas County court properly had jurisdiction of his petition, the father contends, it erred when it dismissed the petition for failure to state a claim upon which relief can be granted. With that contention, we agree. The proper grounds for a petition to modify, vacate, or revoke a permanent guardianship are identified in OCGA § 15-11-244 (c)[9]:

> The guardianship shall be modified, vacated, or revoked based upon a finding, by clear and convincing evidence, that there has been a material change in the circumstances of the child who was adjudicated as a dependent child or the guardian and that such modification, vacation, or revocation of the guardianship order and the appointment of a new guardian is in the best interests of the child.

---

[9] The provision of the new Juvenile Code concerning the modification, vacatur, or revocation of a permanent guardianship is substantially identical to the provision of the old Juvenile Code concerning the same subject. See former OCGA § 15-11-30.1 (a) (2) (D) (2012) ("The guardianship shall be modified, vacated, or revoked based upon a finding, by clear and convincing evidence, that there has been a material change in the circumstances of the child or the guardian and that such modification, vacation, or revocation of the guardianship order and the appointment of a new guardian is in the best interest of the child.").

7

By his allegation that he has resolved his problems with substance abuse and now "is a fit and proper parent and is able to assume the responsibilities of full custody," the father has alleged, he says, a "material change in the circumstances of the child," sufficient to authorize the juvenile court to set aside the guardianship of M.F. The guardians respond that the entry of an order of permanent guardianship forever stripped the father of his parental rights, and in any event, OCGA § 15-11-244 (c) affords the father here no possibility of relief because the father has alleged no "material change in the circumstances of the child," only a change in his own circumstances.

We begin with the nature of the legal relationship that now exists between the father and M.F. Although a permanent guardianship indisputably works a limitation of the parental power of a legal parent by vesting that parental power in the guardian, see OCGA § 15-11-242 (b), it does not forever terminate the parental rights of a parent.[10] Indeed, a permanent guardianship is allowed in the first instance only to the extent that a termination of parental rights is not

---

[10] Even a temporary guardianship works a limitation of the parental powers of a legal parent, see OCGA § 29-2-7 (a) (vesting parental power in temporary guardians), but no one seriously would contend that a temporary guardianship forever terminates parental rights. See Boddie v. Daniels, 288 Ga. 143, 146-147 (702 SE2d 172) (2010) (recognizing that temporary guardianships are only temporary).

warranted. See OCGA § 15-11-240 (a) (2) (before entering an order of permanent guardianship, juvenile court must find, among other things, that "termination of parental rights and adoption is not in the best interests of [the] child"). Moreover, the statutory provisions for permanent guardianships expressly contemplate that an earlier ordered permanent guardianship may be revisited upon the "filing of a petition to modify, vacate, or revoke the guardianship and appoint a new guardian," OCGA § 15-11-244 (a), and they contemplate that the permanent guardianship "shall be modified, vacated, or revoked" upon clear and convincing proof of the requisite change in circumstances, accompanied by clear and convincing proof that the modification, vacatur, or revocation is in the best interest of the child. OCGA § 15-11-244 (c). No doubt, a permanent guardianship is presumptively permanent, in the sense that the permanent guardians are vested with parental power indefinitely, and a heavy burden is put upon those who would seek to change or undo the guardianship — the grounds for changing or undoing the guardianship must be proved clearly and convincingly. But the very fact that the statutes contemplate vacating a permanent guardianship altogether — as well as modifying a permanent guardianship or revoking it and appointing a new

9

guardian — signals quite clearly that the statutes do not mean for a permanent guardianship to work a termination of parental rights.[11]

About the argument that the father only alleges a change in his own circumstances and has failed, therefore, to allege "a material change in the circumstances of [M.F.]," the guardians read OCGA § 15-11-244 too narrowly. It is true that, to permit a modification, vacatur, or revocation of a permanent guardianship, the statute requires "a material change in the circumstances of the child . . . or the guardian." OCGA § 15-11-244 (c). When we consider the meaning of a statute, of course, "we must presume that the General Assembly

---

[11] Invoking principles of res judicata, collateral estoppel, judicial estoppel, and waiver, the guardians also argue that the father consented to the permanent guardianship, and so, he cannot now be heard to complain about it. Although it appears that the father said at the hearing that preceded the entry of the permanent guardianship in January 2012 that he "did not wish to continue with the evidence but did want to be heard on the issues of visitation and child support," the record does not reflect any finding by the juvenile court that the father expressly consented to the order of permanent guardianship. More important, even if the father had consented to the entry of that order, it would mean only that he could not be heard to complain that the juvenile court erred by setting up a permanent guardianship in the first place. The father does not complain now, however, that a permanent guardianship was not warranted in January 2012. To the contrary, he says that things have changed since then, and the permanent guardianship ought to now be set aside. And most important, the very statutes that authorize the entry of a permanent guardianship also contemplate that circumstances may later arise that would be good cause for setting aside the guardianship. See OCGA § 15-11-244. See also former OCGA § 15-11-30.1 (a) (2) (D) (2012). To the extent the father consented to the entry of the order of permanent guardianship in January 2012, his right to petition now for the modification, vacatur, or revocation of that guardianship is not absolutely foreclosed by his prior consent under principles of preclusion, estoppel, or waiver.

meant what it said and said what it meant," <u>Deal v. Coleman</u>, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted), and for that reason, "we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." <u>FDIC v. Loudermilk</u>, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014) (citation and punctuation omitted). Accordingly, the common and customary usages of the words of a statute are important, <u>Hendry v. Hendry</u>, 292 Ga. 1, 2-3 (1) (734 SE2d 46) (2012), but so is their context. <u>Smith v. Ellis</u>, 291 Ga. 566, 573-574 (3) (a) (731 SE2d 731) (2012). As we have explained, "[f]or context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." <u>May v. State</u>, 295 Ga. 388, 391-392 (761 SE2d 38) (2014) (citations omitted).

As important context for OCGA § 15-11-244, we note that the law generally recognizes a presumption that a child ordinarily belongs in the care and custody of her parents. See <u>Stone v. Stone</u>, 297 Ga. 451, 454 (774 SE2d 681) (2015). Moreover, in this case, the juvenile court was authorized to order a permanent guardianship in the first instance only because M.F. was shown, as

11

of January 2012, to be a "deprived" child because she was without a parent then fit to be responsible for her care and custody. See former OCGA § 15-11-30.1 (a) (2) (A) (2012) (permanent guardianship authorized only following "an adjudication that the child is deprived"). Given the general presumption of parental custody, one can hardly imagine a change in circumstances more material for such a child than the subsequent reappearance of a parent fit to be charged with her care and custody, thereby rendering the child no longer a "deprived" or "dependent" child. That a change in the circumstances of a parent results in a previously unfit parent now being fit to have responsibility for the care and custody of his child may amount to "a material change in the circumstances of the child," as these words most naturally would be understood in the relevant context. That, we conclude, is the most reasonable understanding of OCGA § 15-11-244 (c).[12,13]

---

[12] Not every change in the circumstances of a parent will amount to a material change in the circumstances of a child. We hold only that a change in parental circumstances sufficient to render a previously unfit parent fit may constitute a material change in the circumstances of the child.

[13] A couple of hypothetical examples illustrate well, we think, some of the concerns that would arise if the law afforded no opportunity to revisit a permanent guardianship upon a parent regaining fitness to be responsible for the care and custody of his child, as the guardians contend. Consider, for instance, a fit parent who is comatose for a long period of time following a traumatic accident, a condition that, her physicians conclude, is almost

Moreover, if we were to understand OCGA § 15-11-244 (c) as the guardians do, it would pose serious questions about the constitutionality of the statutes concerning permanent guardianships. The presumption that children ordinarily belong in the care and custody of their parents is not merely a presumption of the statutory and common law, but it has roots in the fundamental constitutional rights of parents. The Constitution secures the fundamental "right of parents to direct the upbringing of their children," Troxel v. Granville, 530 U. S. 57, 65 (II) (120 SCt 2054, 147 LE2d 49) (2000), and it "protects a private realm of family life which the state cannot enter without compelling justification." Arnold v. Bd. of Ed. of Escambia County, 880 F2d 305, 313 (III) (A) (2) (11th Cir. 1989) (citation omitted). As we have explained, "parents have a fundamental liberty interest in the care, custody, and management of their children," Clark v. Wade, 273 Ga. 587, 593 (III) (544 SE2d

certain to continue for the duration of her life. Consider as well a fit parent who goes missing in action while in the service of our country and is unlikely, according to the military authorities, ever to return. In such circumstances, a court might well put the children of such parents in permanent guardianships if there is no other fit parent to have custody of the children. See OCGA § 15-11-2 (22) (C) (child "without his or her parent, guardian, or legal custodian" is a "dependent child"). See also former OCGA § 15-11-2 (8) (D) (child "without a parent, guardian, or custodian" is a "deprived child"). Now suppose, however, that the comatose parent awakens against all odds, or the missing parent returns unexpectedly. It would be extraordinary, we think, to conclude that the law denies such a parent any opportunity whatsoever to regain custody of her child.

13

99) (2001) (citation omitted), and "[t]here can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to [his] offspring." Nix v. Dept. of Human Resources, 236 Ga. 794, 795 (225 SE2d 306) (1976). Unless and until the relationship of parent and child is lawfully terminated, parents retain parental rights, even in circumstances in which they properly may have lost parental power:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost [at least] temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

Santosky v. Kramer, 455 U. S. 745, 753-754 (II) (102 SCt 1388, 71 LE2d 599) (1982). For these reasons, if the law did not afford the now fit parent of a child under a permanent guardianship any opportunity at all to revisit the question of a guardianship and thereby regain some or all of his parental power, it would raise serious constitutional questions. See generally Brooks v. Parkerson, 265

14

Ga. 189, 191-194 (2) (454 SE2d 769) (1995) (finding grandparent visitation statute to work an unconstitutional infringement of parental rights).

Accordingly, to the extent that there were any ambiguity about the meaning of OCGA § 15-11-244 (c) in this context, we would invoke the doctrine of constitutional doubt and construe the statute so as to avoid the serious constitutional concerns that would otherwise be raised. See Haley v. State, 289 Ga. 515, 521-522 (2) (b) (712 SE2d 838) (2011). See also Stone, 297 Ga. at 455 (invoking doctrine of constitutional doubt with reference to the meaning of statute concerning child custody). As we explained in Haley,

> The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality. This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that the legislature, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that the legislature intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.

289 Ga. at 522 (2) (b) (citation and punctuation omitted). See also Clark v. Martinez, 543 U. S. 371, 381 (II) (125 SCt 716, 160 LE2d 734) (2005); Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Constr. Trades Council, 485 U. S. 568, 575 (108 SCt 1392, 99 LE2d 645) (1988). Here, even if it were not

15

the *only* reasonable way in which to understand the statute, it certainly is not unreasonable — as we explained earlier — to understand OCGA § 15-11-244 (c) to include the restoration of fitness to a previously unfit parent as among the material changes in the circumstances of a child that would permit a modification, vacatur, or revocation of a permanent guardianship. The doctrine of constitutional doubt would point toward such an understanding of the statute.

Here, the petition of the father alleges the material change in circumstances that would be required to permit the modification, vacatur, or revocation of the permanent guardianship of M.F. Accordingly, his petition states a claim under OCGA § 15-11-244 upon which relief might properly be granted, so long as the father proves that material change in circumstances clearly and convincingly, and so long as he proves as well that his custody of M.F. is now in her best interest. Whether the father can prove those things is a question for the juvenile court. But the juvenile court erred when it dismissed the petition, and we reverse the judgment of dismissal. The trial court also erred when it awarded attorney fees to the guardians on the ground that the petition "was without any basis as outlined in OCGA § 15-11-244," and so, we reverse the award of attorney fees as well.

Judgment affirmed in part and reversed in part. All the Justices concur.