**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 29, 2016**

# In the Court of Appeals of Georgia

A15A2359. IN THE INTEREST OF J. M. L., a child.

MCFADDEN, Judge.

Lesli Huso, who wishes to adopt three-year-old J. M. L. appeals from the juvenile court's order appointing the girl's foster mother, Ava Deverger, as her permanent guardian. See former OCGA § 15-11-30.1.[1] In an earlier appeal in this case, we affirmed an order in which the juvenile court determined that it was in J. M. L.'s best interest to award Deverger permanent guardianship. *In the Interest of J. M. L.*, __ Ga. App. __ (Case No. A15A0315, decided Jan. 28, 2015).

In this appeal, Huso asks us to revisit two issues that we resolved against her in the earlier appeal: whether the juvenile court had jurisdiction to make the

---

[1] Georgia's former Juvenile Code applies to this case because it involves a juvenile proceeding that was commenced before January 1, 2014. See *In the Interest of G. R. B.*, 330 Ga. App. 693 n. 1 (769 SE2d 119) (2015).

permanent guardianship ruling, and whether the juvenile court's ruling met the statutory requirements for the appointment of a permanent guardian. Although we resolved the earlier appeal in this case in an unpublished decision without opinion pursuant to Court of Appeals Rule 36, our Supreme Court has made it clear that such decisions still establish the law of the case. Huso is not entitled to a second try at a more favorable appellate ruling on those issues.

Huso also argues that we should reverse the order on appeal because, instead of conducting a hearing and determining J. M. L.'s best interest *after* Deverger filed a guardianship petition, the juvenile court held the hearing and made the best interest determination *before* the guardianship petition was filed. Nevertheless, Huso was notified of and participated in the hearing, and we are not persuaded by her argument that the juvenile court's failure to conduct a second hearing and make a second best interest determination after the filing of the petition is reversible error.

For these reasons, as detailed more fully below, we affirm the juvenile court's order appointing Deverger as J. M. L.'s permanent guardian. We deny Deverger's motions to dismiss this appeal and for sanctions.

1. *Facts and procedural posture.*

2

As an initial matter, we note that the appellate record in this case is limited. It is comprised mostly of court filings and orders, and the bulk of the facts in this case are set out in the first order, which we previously affirmed. Although several evidentiary hearings occurred before the juvenile court entered the order that was the subject of Huso's first appeal, the parties chose not to include transcripts of those hearings in the appellate record. "In accordance with the presumption of the regularity of court proceedings, we must assume in the absence of a transcript that there was sufficient competent evidence to support the [juvenile] court's findings." *Reed v. Reed*, 295 Ga. 574, 578 (2) (761 SE2d 326) (2014) (citation and punctuation omitted).

Keeping these limitations in mind, the record shows that J. M. L. was born on April 17, 2012. At the time of J. M. L.'s birth, her mother was a residential patient in a substance abuse rehabilitation facility and her three older half-siblings (hereinafter, the siblings) were in the temporary legal custody of the Department of Family and Children's Services (DFCS) and the physical custody of J. M. L.'s great aunt. Because the mother was making progress on her case plan at the time, DFCS did not seek to have J. M. L. removed from her custody. Eventually, J. M. L. and her mother joined her siblings in the great aunt's home.

In March 2013, the mother left the great aunt's home with J. M. L. and was found at a motel about a week later. She had resumed using drugs. At that point, DFCS obtained legal custody of the girl and began proceedings in the juvenile court to have her adjudicated deprived. Initially DFCS sought to place J. M. L. in the physical custody of her great-aunt, with her siblings, but the great aunt declined to take her. Consequently, in late March 2013, DFCS placed J. M. L. in foster care with Deverger. At that point, J. M. L. was approximately 11 months old. She has remained in Deverger's physical custody since that time.

At a hearing in October 2013, a court-appointed guardian ad litem informed the juvenile court that Huso, a Florida resident who had become acquainted with the great aunt, sought to adopt all four children. The juvenile court instructed DFCS to investigate this possibility.

In January 2014, Huso filed a petition in superior court seeking an order confirming the termination of the biological parents' parental rights to all four children so that she could begin proceedings in Florida to adopt them. In support of her petition, Huso presented the superior court with documents reflecting that the mother of the four children and the biological fathers of J. M. L.'s three siblings had surrendered their parental rights. She also presented evidence that J. M. L.'s

4

biological father was unknown. However, she did not inform the superior court either that DFCS had legal custody of the children or that the children were the subject of a juvenile court proceeding.

In February 2014, Huso moved to intervene in the juvenile court proceeding and petitioned for that court to transfer custody of the four children to her so that she could take action in Florida to adopt them. At that time, Huso made the juvenile court aware of her pending petition in the superior court. After an April 3, 2014 hearing, the juvenile court granted Huso's motion to intervene and entered a provisional order granting her temporary custody of J. M. L.'s siblings. As to J. M. L., however, the juvenile court scheduled a new hearing because Deverger had not been given notice of the first hearing.

In the meantime, still unaware of the juvenile court proceeding, the superior court entered an order on April 14, 2014 terminating the parental rights of the four children's mother and fathers.

On April 17, 2014, Deverger moved to intervene in the juvenile court proceeding and filed a written objection to Huso's petition for a change of custody. The juvenile court permitted her to intervene, over Huso's objection.

On April 25, 2014, the juvenile court began the rescheduled hearing on Huso's motion for custody of J. M. L. but suspended it after the child's guardian ad litem could not continue to participate for medical reasons. The juvenile court resumed the hearing on June 27, 2014 with a new guardian ad litem. The juvenile court concluded the hearing on July 1, 2014. Huso participated in the hearing.

At around this time the juvenile court informed the superior court about the juvenile court proceeding, and on June 24, 2014, before the conclusion of the juvenile court hearing, the superior court issued an order setting aside his April 14 order terminating parental rights as to the four children. In the June 24 order, the superior court chided Huso for not notifying him of the juvenile court proceeding, which the superior court believed her counsel was obliged to do. The superior court stated that, consequently, he

> was not informed of a fact necessary to enable [him] to make an informed decision. The pendency of another proceeding involving the minor children clearly is such a fact. If counsel for [Huso] had complied with his obligations as aforesaid, [the superior court] would not have entered the proposed order [counsel] presented to the [c]ourt ex parte before reviewing the pleadings and the evidence adduced in that [juvenile court] proceeding. After doing so, the [c]ourt would have determined whether [he] should exercise jurisdiction to terminate parental rights, or allow the [j]uvenile [c]ourt proceedings to proceed.

6

> Those proceedings could provide [Huso] the same relief she sought in this ex parte proceeding, termination of the parental rights of the children she wishes to adopt.

(Punctuation omitted.) (Huso asserts in one of her appellate briefs that the superior court subsequently took additional actions, but the appellate record in this case contains no other superior court orders or information about what, if any, further proceedings have occurred in that court since the entry of the June 24, 2014, order setting aside the earlier termination order. Huso cannot carry her burden on appeal by citing in her brief to documents which are not in the record. *Brown v. Fokes Properties 2002*, 283 Ga. 231, 232 (1) (657 SE2d 820) (2008); *Threatt v. Rogers*, 269 Ga. App. 402, 404 (1) (604 SE2d 269) (2004).)

On July 27, 2014 the juvenile court entered the order that was the subject of the first appeal in this case (hereinafter, the "first order"). In the first order, the juvenile court held that, even though the mother of J. M. L. surrendered her to Huso for adoption, it was in the girl's best interest to remain permanently in Deverger's custody and care. See *In the Interest of C. B.*, 300 Ga. App. 278, 279 (2) (a) (684 SE2d 401) (2009) ("Notwithstanding a valid surrender, a [juvenile] court may find placement with and adoption by [the person designated by the surrendering parent]

7

not to be in the child's best interest.") (citation omitted). The juvenile court cited evidence of the bond that had formed between J. M. L. and Deverger and the emotional distress that severing that bond would inflict upon the girl. Accordingly, the juvenile court sustained Deverger's objection to the proposed change of custody sought by Huso. Instead, in the first order, the juvenile court awarded permanent guardianship of J. M. L. to Deverger upon the condition that Deverger file a petition for permanent guardianship within ten days. After Deverger filed a guardianship petition, Huso filed a response and a notice of appeal from the first order.

Among the arguments Huso made in her appeal from the first order, she challenged the juvenile court's jurisdiction to award a permanent guardianship to Deverger and she argued that the juvenile court could not have made the statutorily-required findings for such an award. We were not persuaded, and affirmed the first order in an unpublished decision under Ct. App. R. 36 on the grounds that "(1) The evidence supports the judgment; (2) No reversible error of law appears, and an opinion would have no precedential value; and (3) The judgment of the court below adequately explains the decision."

While the appeal of the first order was pending, the juvenile court determined that, should that first order be affirmed, a further order would be required to actually

8

appoint Deverger as J. M. L.'s permanent guardian. Accordingly, upon remittitur, the juvenile court on April 8, 2015 entered the order that is the subject of the instant appeal (hereinafter, the "second order"). In the second order, the juvenile court granted Deverger's petition for permanent guardianship, ordered that Deverger be appointed J. M. L.'s permanent guardian, and ordered that DFCS be relieved of custody of the child. As in the first order, the juvenile court held in the second order, among other things, that he had jurisdiction over the action and that the appointment of Deverger as a permanent guardian was in J. M. L.'s best interest.

In this appeal, Huso argues that the juvenile court erred in entering the second order for three reasons: because the juvenile court lacked jurisdiction to appoint Deverger as permanent guardian; because the juvenile court could not have made the statutorily-required findings for such an appointment; and because the juvenile court had not met statutory requirements to provide notice and a hearing before appointing Deverger the girl's permanent guardian. As detailed below, none of these arguments require reversal.

2. *Huso's first enumeration of error.*

In her first enumeration of error, Huso challenges the juvenile court's jurisdiction to enter the permanent guardianship order. As our Supreme Court has

9

made clear, however, juvenile courts have original jurisdiction of proceedings for permanent guardianships under both our former and current Juvenile Code. *In the Interest of M. F.*, 298 Ga. 138, 139-140 (1) & n. 4 (780 SE2d 291) (2015). See former OCGA § 15-11-30.1 (a) (2) ("the juvenile court shall be vested with jurisdiction to appoint a permanent guardian for a child whose custody is the subject of controversy before the court as a result of an adjudication that the child is deprived").

Moreover, the basis of this enumeration of error is Huso's assertion that the juvenile court "lacked subject matter jurisdiction or authority to ignore, invalidate, and/or set aside [the mother's] surrender of her parental rights as to J. M. L. in favor of [Huso]." In the first appeal in this case, we considered and rejected this very assertion, affirming the first order in the face of Huso's nearly-identical claim that the juvenile court erred in entering the first order because "a [j]uvenile [c]ourt does not have subject matter jurisdiction or authority to ignore, invalidate, and/or set aside a valid surrender of parental rights that had been properly executed by a child's legal mother placing the child for adoption, so long as the legal mother's parental rights have not been terminated."

Although our earlier decision was unreported and nonprecedential, see Ct. App. R. 36, our Supreme Court has held that such decisions are "still binding on the

parties, for they establish the law of the case as provided by OCGA § 9-11-60 (h)." *Moreton Rolleston, Jr., Living Trust v. Kennedy*, 277 Ga. 541, 542 (591 SE2d 834) (2004) (citation and punctuation omitted); accord *Rooney v. State*, 287 Ga. 1, 2 (2) (690 SE2d 804) (2010). Accordingly, Huso is bound by our earlier rejection of her first enumeration of error. See *Moreton Rolleston, Jr., Living Trust*, supra; see also *Smith v. Nasserazad*, 247 Ga. App. 457 (1) (544 SE2d 186) (2001) (looking to enumerations of error in appellate record in Rule 36 case to determine what rulings are binding on parties in subsequent appeal). She cannot seek a second appellate review of the issue.

We find no merit in Huso's argument that the law of the case rule does not apply because her initial appeal from the first order was "premature." This argument appears to challenge this court's jurisdiction to decide Huso's initial appeal. However, a determination that we had such jurisdiction was inherent in our decision to consider the appeal and affirm the juvenile court's judgment in the first order. See *Kilgore v. State*, 325 Ga. App. 874 (1) (756 SE2d 9) (2014) ("It is the duty of this court in all instances to inquire into our jurisdiction.") (citation and punctuation omitted).

3. *Huso's second enumeration of error.*

11

In her second enumeration of error, Huso argues that the "[j]uvenile [c]ourt erred in entering [the second order] because it was impossible for the [j]uvenile [c]ourt to find that 'termination of parental rights and adoption' is not in J. M. L.'s best interest in order to satisfy the jurisdictional requirement of OCGA § 15-11-240 (a) (2)." Although Huso bases this argument on Georgia's new Juvenile Code, the former Juvenile Code actually applies to this case, as noted above. See *In the Interest of G. R. B.*, 330 Ga. App. at 693 n. 1.

The provision in the new Juvenile Code to which Huso cites, OCGA § 15-11-240, replaced former OCGA § 15-11-30.1 (a) (2) (A) and (B). The former Juvenile Code pertinently provided that "the juvenile court shall be vested with jurisdiction to appoint a permanent guardian for a child whose custody is a subject of controversy before the court as a result of an adjudication that the child is deprived[,]" and set forth the findings that the juvenile court was required to make before entering such an order. Former OCGA § 15-11-30.1 (a) (2) (A). Those requirements included a finding by the juvenile court "that termination of parental rights and adoption . . . is not in the best interest of the child[.]" Former OCGA § 15-11-30.1 (a) (2) (A) (ii). Huso argues that the juvenile court did not make and could not have made this finding.

12

We are sympathetic to Huso's observation that some of the facts of this case are at odds with a finding that termination of parental rights and adoption were not in J. M. L.'s best interest, given that the mother had surrendered her rights to the girl and that in both the first and second order the juvenile court noted that the permanent guardianship was "for the purpose of adoption." Nevertheless, in the first order the juvenile court held that it had made all of the necessary findings to appoint Deverger as J. M. L.'s permanent guardian required by either the former or new Juvenile Code, and we affirmed the first order in the face of a similar challenge from Huso. As stated above, our earlier affirmance of the first order establishes as the law of the case that the juvenile court was authorized to find that all of the statutory requirements for appointing a permanent guardian were met in this case. See *Moreton Rolleston, Jr., Living Trust*, 277 Ga. at 542; *Smith*, 247 Ga. App. at 457 (1).

4. *Huso's third enumeration of error.*

In her third enumeration of error, Huso asserts that the "[j]uvenile [c]ourt erred in entering [the second order] without first providing notice as required by OCGA § 15-11-243 (a), without holding a hearing on the petition for permanent guardianship to address [Huso's] objections as required by OCGA § 15-11-243 (b), and without considering Code Section 15-11-240 as required by OCGA § 15-11-243 (b)."

13

As mentioned above, although Huso cites to the new Juvenile Code, the former Juvenile Code applies. The provision of the former Juvenile Code relevant to this claim of error is former OCGA § 15-11-30.1 (a) (2) (E), which pertinently provides:

> Notice of a guardianship petition pursuant to this paragraph shall be given in accordance with subsection (c) of Code Section 29-2-17[.] The hearing shall be conducted in accordance with Code Section 29-2-18, to determine the best interest of the child, and in reaching its determination the court shall consider subparagraph (A) of this paragraph [setting forth the required findings for appointing a permanent guardian].

Subsection (c) of OCGA § 29-2-17 requires notice of a petition for permanent guardianship of a minor to be given to specified persons by specified means of service. OCGA § 29-2-18 provides that, "[u]pon the filing of a petition for the appointment of a permanent guardian of a minor and the giving of notice, the court shall hold a hearing and the standard for determination for all matters at issue shall be the best interest of the minor."

Huso correctly points out that the juvenile court did not follow the order set forth in the above Code sections. This is due to the unusual procedural path taken by this case, whereby the juvenile court determined that Deverger's permanent guardianship was in J. M. L.'s best interest in the context of a hearing on Huso's

motion for custody of the girl. The above Code provisions contemplate a guardianship petition, followed by notice to certain persons, followed by a hearing at which the juvenile court makes a best interest determination. Here, however, the hearing at which the juvenile court determined that a permanent guardianship was in J. M. L.'s best interest occurred *before* Deverger filed a guardianship petition and gave Huso notice of that petition.

Nevertheless, the record shows that a multi-day hearing did occur, that Huso participated in the hearing, that in an order the juvenile court made a best interest determination in which he considered the statutory requirements, that Deverger subsequently filed a guardianship petition on the instruction of the juvenile court, that she served the petition upon Huso's counsel, and that Huso filed a response to that petition. The record further shows that Huso filed a notice of appeal from the juvenile court's order a day before a hearing was scheduled to occur in the case. In that appeal, Huso did not challenge the juvenile court's lack of strict compliance with the timing of the above filings, actions, and proceedings.

Given these circumstances, we are not persuaded by Huso's argument that the second order must be reversed so that the juvenile court can hold a second hearing and make a second determination about whether the permanent guardianship is in J.

15

M. L.'s best interest. The juvenile court held a hearing and made a determination that it was in J. M. L.'s best interest to appoint Deverger as her permanent guardian, and we affirmed that ruling. A further hearing on the issue would serve no purpose under the particular circumstances of this case.

*Judgment affirmed. Ellington, P. J., concurs and Dillard, J., concurs in the judgment only.*

A15A2359. IN THE INTEREST OF J.M.L., a child.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As a result, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent. See Court of Appeals Rule 33 (a).