**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 20, 2018**

# In the Court of Appeals of Georgia

A18A0807. IN THE INTEREST OF J. W., a child.                    DO-028

DOYLE, Presiding Judge.

The mother of J. W. appeals from a juvenile court order granting the maternal grandfather's petition for permanent guardianship of J. W., a minor child born on March 28, 2003. The mother contends that the juvenile court erred because the evidence was insufficient to support findings that (1) continuing efforts of reunification would be detrimental to the child, and (2) guardianship was in the best interests of the child. Because the record supported the juvenile court's findings, we affirm.

When reviewing the findings that support a guardianship order,

this [C]ourt construes the evidence in favor of the judgment and determines whether a rational trier of fact could have found clear and convincing evidence that reunification services should not be provided.

We neither weigh the evidence nor determine the credibility of witnesses; we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.[1]

So viewed, the evidence shows that the mother met J. W.'s father when they were using methamphetamine together. The father and mother dated for a few months, but after they stopped seeing each other romantically, the mother learned that she was pregnant with J. W. According to the mother, during the first several years of J. W.'s life, she began using methamphetamine on a daily basis — eventually doing it "constantly like non-stop" — "neither one of us was exactly the best parent." Her drug use was due in part to the strain of "working at night and trying to take care of everything and the baby [J. W.] during the day." In the meantime, the mother gave birth to two additional children, and from a very young age, J. W. began to exhibit behavioral problems; and after J. W. was evaluated later, he was diagnosed with Asperger's syndrome, reactive attachment disorder, and post traumatic stress disorder.

---

[1] *In the Interest of K. G.*, 343 Ga. App. 345, 347 (2) (b) (807 SE2d 70) (2017). See also *Strickland v. Strickland*, 298 Ga. 630, 633-334 (1) (783 SE2d 606) (2016) ("In the appellate review of a bench trial [over child custody], a trial court's factual findings must not be set aside unless they are clearly erroneous. Rather, due deference must be given to the trial court, acknowledging that it has the opportunity to judge the credibility of the witnesses.") (citations omitted).

In the summer of 2015, when J. W. was twelve, the mother was evicted and could not maintain housing or employment, a dependency action was initiated, and J. W. was adjudicated dependent and placed with his maternal grandfather. In October 2015, a final adjudication of dependency was entered along with a disposition order adopting a reunification case plan for the mother and granting custody to the grandfather until further order from the juvenile court. The case plan required that J. W. receive appropriate mental health counseling and that the mother: attend residential drug treatment and remain sober, work with parenting coaches to gain insight into her own parenting and J. W.'s needs, acquire stable, drug-free housing, develop healthy and supportive relationships with law-abiding people, and refrain from contacting people actively using drugs or engaging in other criminal activity.

In early 2016, a review order was entered finding that J. W. had stabilized in the grandfather's home and improved in school, and the court ordered that additional benefits be sought for the child and visitation by the mother could ensue as approved by J. W.'s therapist. In July 2016, the grandfather petitioned the juvenile court for permanent guardianship over J. W., and after a preliminary hearing in September 2016, the court held a hearing in February 2017, which hearing was continued until May 2017 because the mother was without legal representation. Following a final

hearing, which included testimony from the mother, the grandfather, the guardian ad litem ("GAL"), and J. W.'s therapist, the juvenile court entered an order granting the permanent guardianship. The mother now appeals.

1. The mother contends that the evidence did not support a finding by clear and convincing evidence that continuing efforts of reunification would be detrimental to J. W. Because there is evidence specifically showing that, in light of J. W.'s diagnosed disorders, continued uncertainty about his living situation and guardianship would be harmful, we disagree.

Before a juvenile court is authorized to appoint a permanent guardian, the court is required to "[f]ind that reasonable efforts to reunify such child with his . . . parents would be detrimental to such child. . . ."[2] At the hearing, the evidence showed that the mother had made substantial progress on her case plan by entering into a residential treatment facility and remaining sober, attending counseling, and obtaining employment. But there was also evidence that, since the case plan was put into effect, she had entered into and wished to maintain a romantic relationship with a boyfriend on probation for possession of methamphetamine, despite five months earlier telling the juvenile court that she had no interest in dating, and she understood the risks

[2] OCGA § 15-11-240 (a) (1).

4

inherent in entering into a romantic relationship with someone else in recovery from drug addiction. At the time of the final hearing, the mother had decided to move from the Douglas County area (where J. W. went to school, received therapy, and lived with his grandfather) to the Savannah, Georgia area, temporarily residing in two locations until arriving at her third a week before the final hearing.

Pertinent to the mother's relocation and housing circumstances, there was evidence from both the GAL and from J. W.'s therapist, a licensed practicing counselor, addressing J. W.'s heightened need for stability due to his diagnosis of Asberger's syndrome and post-traumatic stress disorder. It was undisputed that since moving in with his grandfather, J. W. had progressed significantly — his behavior improved, he had begun developing positive relationships with peers, and he had moved from an assistive classroom to a classroom in a "regular middle school, [in] which, amazingly, he's done pretty well." J. W.'s progress was attributed to the therapy and stability he enjoyed while living with his grandfather. The GAL testified that because of his condition, J. W. needs "a lot of stability" and would not "do well with change. . . so I think that it would be probably very detrimental to his progress to move him."

Similarly, J. W.'s therapist testified that "he's still working through his trauma[,] and . . . sometimes he experiences . . . a re-traumatization, which is indicat[ed] by his behaviors." The therapist explained that "what I'm referring to when I say that is, especially the ongoing court situation and the consistent reminders of [']where am I going to be['] and [']who will I be placed with['] and [']what does my future look like[?']" Therefore, "if a court situation comes about and he knows that there may be a change," his behavior regresses. The therapist emphasized in this testimony that, due to J. W.'s diagnoses, disruptions in stability, such as a move to Savannah with his mother to live with his younger siblings, would "set him back at a very important [time]." This was also based on his history with his mother when J. W. "was responsible for caring for his [younger] siblings[,] . . . and . . . facing the potential for that responsibility again creates anxiety and re-traumatizes him." Based on J. W.'s need for stability, the mother's history and current lack of established, long-term stability and sobriety, the therapist concluded that a permanent guardianship with his grandfather "would be very helpful." The therapist specifically explained that a reunification plan would be harmful because it would prolong the uncertainty: "[J. W.] needs . . . something he can hold onto, something he can say this is what's going to happen and we're going to plan around it."

6

This testimony about J. W.'s needs at the time of the final hearing and the mother's history and her circumstances at the final hearing provided clear and convincing evidence that continuing to work a reunification plan would be detrimental to J. W.[3] Accordingly, this enumeration is without merit.

2. The mother also contends that the evidence failed to show that guardianship was in the best interests of J. W. Again, we disagree.

In addition to the finding above, the juvenile court must make a finding "that the appointment of a permanent guardian for such child is in the best interests of such child and that the individual chosen as such child's permanent guardian is the individual most appropriate to be such child's permanent guardian taking into consideration the best interests of the child."[4] Here, the GAL and J. W.'s therapist both testified that granting the grandfather's guardianship petition was in the best interest of J. W.[5] This was supported by the above testimony outlining the harm

---

[3] See *In the Interest of K. G.*, 343 Ga. App. at 350 (affirming finding of clear and convincing evidence that reunification would be detrimental because of the child's particular needs and the mother's failure to meet them).

[4] OCGA § 15-11-240 (a) (4).

[5] The GAL noted that termination of the mother's parental rights was not in J. W.'s best interest because she had a relationship with him, and continued contact was not detrimental to J. W.

suffered by J. W. in his mother's custody and the harm to J. W. presented by continuing the uncertainty in his living conditions that he had already experienced for the two years prior to the guardianship hearing.[6]

> In the appellate review of a bench trial . . . due deference must be given to the trial court, acknowledging that it has the opportunity to judge the credibility of the witnesses. After giving the juvenile court's findings of fact the required deference, we find that the court was authorized to conclude that the permanent guardian had demonstrated by clear and convincing evidence that the appointment of a permanent guardian would be in [J. W.'s] best interests.[7]

Accordingly, this enumeration presents no basis for reversal.

*Judgment affirmed. Dillard, C. J., and Mercier, J., concur.*

---

[6] See *In the Interest of M. F.*, 298 Ga. 138, 140 n. 4 (780 SE2d 291) (2015) (finding no material difference in former Juvenile Code and current Juvenile Code with respect to orders of permanent guardianship); *In the Interest of D. T. A.*, 318 Ga. App. 182, 185 (2) (733 SE2d 466) (2012) (decided under former Juvenile Code and noting that the same evidence that shows a lack of parental care and control can also support a finding that termination is in a child's best interests); *Whitehead v. Myers*, 311 Ga. App. 680, 688-689 (1) (716 SE2d 785) (2011) (guardianship under former Code). See also *In the Interest of A. B.*, 274 Ga. App. 230, 232 (617 SE2d 189) (2005) ("it is well settled that children need permanence of home and emotional stability[,] or they are likely to suffer serious emotional problems") (citations omitted).

[7] (Citation and punctuation omitted.) *In the Interest of K. G.*, 344 Ga. App. 674, 676-677 (2) (__ SE2d __) (2018).