**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 24, 2025**

# In the Court of Appeals of Georgia

A24A1803. IN THE INTEREST OF A. H., A CHILD.

WATKINS, Judge.

This ongoing dependency action began when A. H.'s mother and Appellant, A. H.'s biological father, were arrested in connection with the murder of the biological father of A. H.'s half-sister. Appellant, who is now serving a life sentence for felony murder, seeks review of an order granting permanent guardianship of A. H. to the maternal grandparents, arguing that the juvenile court failed to make the findings required by OCGA § 15-11-240 and that there was no showing that the permanent guardianship was in A. H.'s best interests. For the reasons that follow, we affirm.

In June 2024, in an unpublished opinion, we affirmed the juvenile court's denial of Appellant's objection to a notice of change of A. H.'s placement from the child's

paternal grandparents to his maternal grandparents.[1] Specifically, we held that the record did not show that the juvenile court abused its wide discretion in considering the factors relevant to A. H.'s best interests, including "the emotional ties between A. H. and his sister, the continuity of A. H.'s relationship with [his mother], the parent with whom reunification was more likely, the child's wishes and long-term goals, and the recommendation of the guardian ad litem and the court-appointed special advocate."

While the prior appeal was pending, the juvenile court held a hearing on the petition for permanent guardianship filed by the Georgia Department of Human Services, acting through the Fayette County Division of Family and Children Services (the "Department"). "In the appellate review of a bench trial[,] due deference must be given to the trial court, acknowledging that it has the opportunity to judge the credibility of the witnesses."[2] Here, the hearing was not transcribed,[3] and no

_____

[1] See *In the Interest of A. H.*, 372 Ga. App. XX____ (June 27, 2024) (Case No. A24A0504) (unpublished).

[2] (Citation and punctuation omitted.) *In the Interest of J. W.*, 346 Ga. App. 443, 447 (2) (816 SE2d 409) (2018).

[3] In denying Appellant's "request for transcript," construed as a "motion for transcripts at county's expense," the juvenile court stated: "There is no transcript

2

acceptable substitute for a transcript was submitted.[4] Thus, to the extent that the transcript is necessary to review the claimed errors, "we will assume that the evidence is sufficient and affirm."[5]

Given the absence of a hearing transcript, the following facts (which the juvenile court explicitly stated were shown by the testimony and evidence presented at the hearing) are taken from the juvenile court's Order for Permanent Guardianship:

> [A. H. and his half-sister, A. K. J.,] have been in the temporary custody of the Department since October 2020. In July and August 2023 the children were placed in the home of [their maternal grandparents] by the Department. [A. K. J.] was moved from her foster home . . . and [A. H.] was removed from the home of the [p]aternal [g]randparents. In

---

available as the Juvenile Court of Fayette County records the audio of the hearing. The recording of the hearing is available for review by [Appellant's] attorney. The Court of Appeals does not require a written transcript for the appeal." See generally *Savage v. Savage*, 234 Ga. 853, 854-855 (218 SE2d 568) (1975).

[4] See OCGA § 5-6-41 (c), (i). Even if we could consider the audio recording of the hearing, Appellant has not made any attempt to point us toward specific portions of the recording, which directly conflicts with Court of Appeals Rule 25 (d) (1) (i), (2). It is not this Court's role to cull the record on a party's behalf. See *Phillips v. Phillips*, 316 Ga. App. 829, 830-831 (1) (730 SE2d 548) (2012). See generally Court of Appeals Rules 17-19.

[5] *In the Interest of H. B.*, 346 Ga. App. 163, 165 (1) (816 SE2d 313) (2018).

part, this was to facilitate the children being placed in the same home together as siblings.

Mother and [Appellant] remain incarcerated. Mother is no longer pursuing her post-conviction remedies. Mother is set to serve a maximum of five years [of] confinement and has the possibility of being released earlier. [Appellant] is serving a [l]ife [s]entence and would not be eligible for parole until after [A. H.] reaches the age of majority.

[A. K. J. and A. H.] are receiving therapeutic services[.] Those are separate sessions and then joint when [the therapist] deems them to be appropriate. Further, family therapy with the [maternal grandparents] has been taking place since February 2024 to improve communication between the children and the [maternal grandparents].

[The therapist] testified that [A. H.] has nothing good to say about the [paternal grandparents] and wants [the paternal grandmother] to apologize before any future visits with [the paternal grandparents] for "whooping" him when he was playing with a cousin. [A. K. J.] reports feeling "unwanted" and not included during visits with the [paternal grandparents]. [A. K. J.] has reported that she no longer wishes to have contact with [the paternal grandparents] or any of their relatives.

The [juvenile c]ourt finds [the paternal grandmother's] testimony about wanting to do "anything" for her grandchildren to be inconsistent with her acts and behaviors, such as telling the children if they wanted food that they should ask their "fat b*tch" of a [maternal] grandmother for money. Further, [the paternal grandmother] has made numerous reports about "alleged abuse" of [A. H.] to the child's school, none of which have been substantiated.

The children are doing well in the home of the [maternal grandparents] and have elected them to serve as their permanent guardian. [A. K. J.] has "typical" teenage behavioral issues, but nothing of any major significance. . . . Both children miss their [m]other. [A. K. J.] has been observed by [the therapist] and the [D]epartment to be very protective towards [A. H.] Children have bond[ed] with one another despite their age difference. Children have their own rooms and the [maternal grandparents] sleep in the living room of their new (as of September 2023) apartment.

The juvenile court awarded permanent guardianship to the maternal grandparents. As part of its order, the juvenile court directed that the children could continue to have contact with their respective parents as was currently taking place, and the court left the issue of visitation with the paternal grandparents up to the discretion of their guardians. This appeal followed.[6]

1. As an initial matter, we address the Department's argument that Appellant lacks standing to bring this appeal. Specifically, the Department contends that the

---

[6] The juvenile court entered a separate order denying the paternal grandparents' renewed motion to intervene. In Case Number A24A1804, we dismissed the paternal grandparents' appeal from this order for failure to file a brief and enumeration of errors.

5

order did not affect Appellant's custody rights in light of his life sentence and did not affect his visitation rights because the order allowed him the supervised phone visitation that was already in place. We disagree.

"[O]nly a party who is aggrieved by a judgment has the right to appeal that judgment. A party is 'aggrieved' by a judgment if the judgment operates on his rights of property, or bears directly upon his interest."[7] "Unless and until the relationship of parent and child is lawfully terminated, parents retain parental rights, even in circumstances in which they properly may have lost parental power."[8]

As A. H.'s biological father whose parental rights have not been terminated, Appellant is clearly an "aggrieved" person within the meaning of our law.[9] The

---

[7] (Citations and punctuation omitted.) *In the Interest of L. W.*, 276 Ga. App. 197, 201 (3) (622 SE2d 860) (2005).

[8] *In the Interest of M. F.*, 298 Ga. 138, 145 (2) (780 SE2d 291) (2015).

[9] This Court's decision in *In the Interest of J. R. P.*, 287 Ga. App. 621 (652 SE2d 206) (2007), the sole case cited by the Department, is distinguishable. There, we held that a child's grandmother had no standing to appeal the trial court's deprivation order where "she admittedly was not his legal guardian or custodian[.]" Id. at 622 (1); see also *In the Interest of S. C. S.*, 336 Ga. App. 236, 244 n. 4 (784 SE2d 83) (2016) ("Given the similarities between the definition of a 'deprived child' [under the former Juvenile Code] and that of a 'dependent child,' . . . our previous decisions addressing the deprivation of a child are relevant to appeals involving the dependency of a child.").

juvenile court's prior temporary order granted Appellant supervised phone contact with A. H. after noting that Appellant had had no phone contact with A. H. since the change of placement to the maternal grandparents but had some contact when A. H. visited his paternal grandparents. The order on appeal provided that A. H. could continue to have contact with Appellant as was currently taking place, which, according to a simultaneously entered permanency review hearing order, was only happening during the paternal grandparents' visitation. In addition, the order on appeal "[f]urther [left] the issue of visitation between [A. H.] and the [p]aternal [g]randparents [up] to the discretion of the guardians, [the maternal grandparents]." Thus, because the permanent guardianship order affected Appellant's right to visitation,[10] the Department's argument that Appellant lacks standing is without merit.

---

[10] See OCGA § 15-11-242 (a) (3) ("Permanent guardianship orders entered pursuant to Code Section 15-11-240 shall [e]stablish a reasonable visitation schedule which allows the child adjudicated as a dependent child to maintain meaningful contact with his or her parents through personal visits, telephone calls, letters, or other forms of communication or specifically include any restriction on a parent's right to visitation.").

2. In his first claim of error, Appellant attacks the permanent guardianship order on the ground that the juvenile court failed to make all of the findings required by OCGA § 15-11-240. We disagree.

As is relevant to A. H. (who was six years old when the permanent guardianship order was entered), the statute required the juvenile court, prior to the entry of an order appointing a permanent guardian, to:

(1) Find that reasonable efforts to reunify such child with his or her parents would be detrimental to such child *or find that the living parents of such child have consented to the permanent guardianship*;

(2) Find that termination of parental rights and adoption is not in the best interests of such child;

(3) Find that the proposed permanent guardian can provide a safe and permanent home for such child; [and]

(4) Find that the appointment of a permanent guardian for such child is in the best interests of such child and that the individual chosen as such child's permanent guardian is the individual most appropriate to be such child's permanent guardian taking into consideration the best interests of the child[.][11]

---

[11] (Emphasis supplied.) OCGA § 15-11-240 (a) (1-4). Subsection 15-11-240 (a) (5) requires additional findings when the child is 14 years of age or older.

Appellant's overarching contention seems to be that there was no reason to appoint the maternal grandparents as "permanent guardians" of A. H. He frames this as a challenge to the first required finding, arguing that "the trial court failed to make a finding that reasonable efforts to reunify A. H. with his mother would be detrimental." However, the juvenile court found that the mother had consented to the permanent guardianship, which satisfies the alternative finding requirement of OCGA § 15-11-240 (a) (1). The court found further that, due to his long-term incarceration, Appellant would not be able to parent A. H.[12]

Within this same enumerated error,[13] Appellant asserts in passing that "[t]he trial court abused its discretion . . . on the basis that the mother could reunify more easily with the child after she returned from prison." Appellant claims generally that this ruling violates "Georgia statutory and appellate case law[,]" citing only to OCGA § 15-11-240 (a), which addresses the required findings.

---

[12] In the simultaneously entered permanency review hearing order, the court found that neither parent had completed the case plan for reunification or remedied the cause of dependency due to their incarcerations.

[13] See OCGA § 5-6-40 (the enumeration of errors shall set out separately each error relied upon); Court of Appeals Rule 25 (a) (4), (7).

Even if we did not deem this argument abandoned,[14] Appellant does not dispute the factual basis (that he is serving a life sentence) or otherwise explain how the possibility of reunification with the mother was an inappropriate consideration. And, as noted above, in the absence of a transcript of the hearing, we assume that the evidence is sufficient to support the court's finding.[15] Accordingly, this argument fails.

3. Appellant next contends that the juvenile court improperly granted permanent guardianship to the maternal grandparents because it was not in the best interests of A. H. pursuant to OCGA § 15-11-26. For example, Appellant complains that there was no evidence in the record to establish that the maternal grandparents' living situation was appropriate.[16]

---

[14] See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[15] See *H. B.*, 346 Ga. App. at 165 (1).

[16] See OCGA § 15-11-26 (1) ("Whenever a best interests determination is required, the court shall consider and evaluate all of the factors affecting the best interests of the child in the context of such child's age and developmental needs. Such factors shall include [t]he physical safety and welfare of such child, including food, shelter, health, and clothing[.]").

As facts supporting its conclusion, the juvenile court found that the maternal grandparents could provide a safe and permanent home. The juvenile court further noted that the children each had their own room, that A. H. was doing well in the home, and that Appellant had not presented any persuasive evidence as to why such guardianship would be inappropriate. As discussed above, "in the absence of a transcript of the evidence, [the reviewing court] must presume that the evidence supports the judge's findings."[17] Thus, based on these facts and the circumstances presented in this case, the juvenile court did not abuse its discretion by arriving at this conclusion.

Finally, to the extent that Appellant continues to complain about the 2023 removal of A. H. from the home of the paternal grandparents, our affirmance in Case Number A24A0504 of the order denying his objection to the change in placement is binding as the law of the case.[18] Because Appellant has failed to show error affirmatively by the record, we affirm.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur.*

---

[17] *Blue v. Blue*, 279 Ga. 550 (1) (615 SE2d 540) (2005).

[18] See OCGA § 9-11-60 (h); *In the Interest of J. M. L.*, 336 Ga. App. 518, 524-525 (3) (784 SE2d 869) (2016).