**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**December 31, 2020**

# In the Court of Appeals of Georgia

A21A0033. IN THE INTEREST OF K. G. V., a child.

BARNES, Presiding Judge.

Sharon O'Connor, the maternal grandmother of K. G. V., appeals from the order of the Superior Court of Gwinnett County dismissing her petition to adopt the minor child. For the reasons discussed below, the trial court erred in concluding that the grandmother could not seek to adopt the child because she was the child's permanent guardian. Accordingly, we reverse.

We begin with the procedural history forming the context for this case. In January 2016, the grandmother of the then four-year-old child filed a petition to terminate the parental rights of the mother and father or, in the alternative, a petition for permanent guardianship in the Juvenile Court of Gwinnett County. The juvenile

court had previously found that the child was dependent and had placed the child in the temporary custody of the grandmother in March 2014.

In November 2016, the juvenile court entered an order denying the grandmother's petition to terminate parental rights but granting her petition for permanent guardianship. The juvenile court found that the mother and father had abandoned the child and that the child was dependent as a result of, among other things, the parent's chronic unrehabilitated substance abuse, felony convictions, and history of incarceration. However, the court found that there was not clear and convincing evidence that termination of parental rights would be in the child's best interest. The juvenile court placed the child under the permanent guardianship of the grandmother, concluding that reasonable efforts to reunite the child with the parents would be detrimental to the child, the grandmother could provide a safe and permanent home for the child, the appointment of a permanent guardian would be in the child's best interests, and the grandmother was the individual most appropriate to serve as the child's permanent guardian, taking into consideration the best interests of the child. See OCGA § 15-11-240 (a). The court also required the parents to pay

child support, among other requirements, and granted them scheduled phone calls and supervised visitation with the child.[1] See OCGA §§ 15-11-240 (b); 15-11-242 (a) (3).

In October 2017, the grandmother filed in the juvenile court a second petition seeking to terminate parental rights or, in the alternative, to modify the conditions of the permanent guardianship. The juvenile court dismissed the petition on res judicata grounds in June 2018.

In July 2018, the grandmother filed a petition in the Superior Court of Gwinnett County seeking to adopt the child.[2] In her petition, the grandmother, as a relative of the child under OCGA § 19-8-7 (a), sought to terminate the mother and father's parental rights under OCGA § 19-8-10 (a) (1), (3) and (5) on the grounds that the parents had abandoned the child; that the father had suffered a recent traumatic brain injury that rendered him incapable of surrendering his parental rights; and that the child was dependent due to lack of proper parental care and control based on, among other things, the parents' chronic unrehabilitated substance abuse, felony convictions,

---

[1] The juvenile court later amended certain conditions of the permanent guardianship and modified visitation.

[2] By superior court order, the adoption petition was heard and ruled upon by the juvenile court judge who ruled on the grandmother's prior petitions seeking termination of parental rights and a permanent guardianship, sitting by designation.

3

and history of incarceration. The petition further alleged that continued contact between the child and parents was causing harm to the child.

The mother filed a motion to dismiss the grandmother's petition for adoption on the ground of res judicata. The trial court denied the motion, concluding that there had been changes in the law that might affect "the ultimate decision and [that] there are allegations that, if proven, could show a change in condition since the last case."[3]

The mother filed a second motion to dismiss the grandmother's petition for adoption, but on a different ground, namely, that dismissal was appropriate because the grandmother had already been granted a permanent guardianship and had custody and control of the child. The mother argued that "[t]he appointment of a permanent guardian ended the child's abandonment and cured her dependency," that "[t]he child's support, stability, and care [were] now the responsibility of [the] grandmother," and that "all claims of abandonment and dependency" with respect to the mother had been rendered moot. Consequently, the mother argued that the grandmother could not show that the child was in a present state of abandonment or dependency vis a vis the mother, and thus could not satisfy the conditions for

_____

[3] The trial court's denial of the mother's motion to dismiss the adoption petition on res judicata grounds is not before us in this appeal.

4

terminating her parental rights under OCGA § 19-8-10 (a) (1) and (5) as part of the adoption process.

At the hearing conducted on the mother's motion to dismiss, the guardian ad litem who had been appointed to represent the father because of his recent brain injury asked the trial court to grant the motion and dismiss the adoption petition. In contrast, the child's guardian ad litem asked the trial court to deny the motion to dismiss, arguing that "[a] guardianship does not preclude a party, if they fit the statutory requirements, to file an adoption."

After the hearing, in November 2019, the trial court granted the motion to dismiss the adoption petition based on the mother's argument regarding the permanent guardianship that had been granted to the grandmother. This appeal by the grandmother followed.

On appeal, the grandmother contends that the trial court erred in dismissing her adoption petition based on the fact that she had been granted a permanent guardianship over the child. We agree.

In her adoption petition, the grandmother sought to adopt the child based on OCGA §§ 19-8-7 (a) and 19-8-10 (a). OCGA § 19-8-7 (a) of Georgia's current adoption code[4] provides:

---

[4] A new version of Georgia's adoption code, OCGA § 19-8-1 et seq., was enacted in 2018, with the changes effective September 1, 2018. See Ga. L. 2018, p. 19, § 4-1. We have held that where both the adoption petition and the trial court's judgment entered on the petition predate the effective date of the revised adoption code, we apply the prior version of the code effective at the time of the petition and judgment. See *Woodall v. Johnson*, 348 Ga. App. 820, 821, n. 1 (823 SE2d 379) (2019). See also *Nathans v. Diamond*, 282 Ga. 804, 808-809 (654 SE2d 121) (2007) ("[T]the rule is that laws that affect substantive rights may operate prospectively only. Substantive law is that law which creates rights, duties, and obligations. Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations.") (citations and punctuation omitted). In the present case, the grandmother filed her adoption petition in July 2018, before the effective date of the revised adoption code, but the trial court entered its order dismissing the petition in November 2019, after the effective date. However, we need not resolve any question of retroactivity here because the parties did not raise the issue in the trial court or on appeal and have preceded on appeal on the assumption that the current version of the adoption code applies when they have quoted the code in their briefs. We therefore will apply the current version of the adoption code in analyzing the issues raised in this appeal. See *Ga. Dept. of Corrections v. Couch*, 295 Ga. 469, 470 (1) (b), n. 2 (759 SE2d 804) (2014) (declining to address retroactivity question and applying current version of statute where parties "have proceeded on the assumption that the current version . . . governs this case, and we will do the same"); *Smith v. Baptiste*, 287 Ga. 23, 30 (3) (694 SE2d 83) (2010) (declining to consider argument that retroactive application of current version of statute that became effective after lawsuit was filed was unconstitutional, where the parties "did not raise this constitutional issue in the trial court and obtain a distinct ruling on it from that court").

6

> A child may be adopted by a relative who is related by blood or marriage to the child as a grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, or sibling only if each living parent and guardian of such child has voluntarily and in writing surrendered to that relative and any spouse of such relative all of his or her rights to the child for the purpose of enabling that relative and any such spouse to adopt the child.

In lieu of obtaining a voluntary surrender of parental rights, a petitioner pursuing an adoption as a relative of the child under OCGA § 19-8-7 (a) may obtain the adoption by satisfying the requirements of OCGA § 19-8-10 (a). See *Hooper v. Hedgepath*, 340 Ga. App. 163, 166 (1) (796 SE2d 779) (2017). OCGA § 19-8-10 (a) provides:

> Surrender or termination of rights of a living parent pursuant to Code Section 19-8-4, 19-8-5, 19-8-6, or 19-8-7 shall not be required as a prerequisite to the granting of a petition for adoption of a child of such living parent pursuant to Code Section 19-8-13 when the court determines by clear and convincing evidence that the:
> (1) Child has been abandoned by that parent;[5]

---

[5] "Parent" is defined in the adoption code as "a legal father or a legal mother of the child." OCGA § 19-8-1 (15). "Legal father" is defined as:
> a male who has not surrendered or had terminated his rights to a child and who:
> (A) Has legally adopted such child;
> (B) Was married to the biological mother of such child at the time such child was born or within the usual period of gestation, unless paternity was disproved by a final order of a court of competent jurisdiction;

(2) Parent cannot be found after a diligent search has been made;

(3) Parent is insane or otherwise incapacitated from surrendering such rights;

(4) Parent caused his child to be conceived as a result of having nonconsensual sexual intercourse with the biological mother of his child or when the biological mother is less than ten years of age; or

(5) Parent, without justifiable cause, has failed to exercise proper parental care or control due to misconduct or inability, as set out in paragraph (3), (4), or (5) of subsection (a) of Code Section 15-11-310,[6]

---

(C) Married a legal mother of such child after such child was born and recognized such child as his own, unless paternity was disproved by a final order of a court of competent jurisdiction; or

(D) Has legitimated such child by a final order pursuant to Code Section 19-7-22.

OCGA § 19-8-1 (11). "Legal mother" is defined as "a female who is the biological or adoptive mother of the child and who has not surrendered or had terminated her rights to the child." OCGA § 19-8-1 (12).

[6] OCGA § 15-11-310 (a) (3)-(5) provides:

(a) In considering the termination of parental rights, the court shall first determine whether one of the following statutory grounds for termination of parental rights has been met:

. . .

(3) The parent has wantonly and willfully failed to comply for a period of 12 months or longer with a decree to support his or her child that has been entered by a court of competent jurisdiction of this or any other state;

(4) A child is abandoned by his or her parent; or

(5) A child is a dependent child due to lack of proper parental care or control by his or her parent, reasonable efforts to remedy the circumstances have been unsuccessful or were not

and the court is of the opinion that the adoption is in the best interests of that child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home.

Nothing in the language of these statutes disqualifies a permanent guardian from seeking to adopt a child. Rather, OCGA § 19-8-3 (a) sets out the eligibility requirements for petitioning for adoption:

> Any individual may petition to adopt a child if he or she:
> (1) Is at least 25 years of age or is married and living with his or her spouse, or is at least 21 years of age and is a relative of the child;
> (2) Is at least ten years older than the child, except such ten-year requirement shall not apply when the petitioner is a stepparent or relative and the petition is filed pursuant to Code Section 19-8-6 or 19-8-7;
> (3) Is a bona fide resident of this state at the filing of the petition for adoption or is a bona fide resident of the receiving state when the

---

required, such cause of dependency is likely to continue or will not likely be remedied in the reasonably foreseeable future, and:
> (A) Returning such child to his or her parent is likely to cause serious physical, mental, moral, or emotional harm to such child or threaten the physical safety or well-being of such child; or
> (B) Continuation of the parent and child relationship will cause or is likely to cause serious physical, mental, moral, emotional harm to such child.

9

adoptee was born in this state and was placed in compliance with Chapter 4 of Title 39, relating to the Interstate Compact on the Placement of Children; and

(4) Is financially, physically, and mentally able to have permanent custody of the child.

A relative who meets these eligibility requirements is entitled to pursue an adoption under OCGA § 19-8-10 (a), irrespective of whether the relative might also be the permanent guardian of the child. Concluding otherwise would require us to engraft a provision disqualifying permanent guardians from petitioning for adoption onto the otherwise plain language of the pertinent statutes, which we decline to do. See *Allen v. Allen*, 265 Ga. 53, 53 (1) (452 SE2d 767) (1995) (declining to "rewrite" statute to graft a new requirement not reflected in the plain language of the statute); *Mullis v. Bone*, 143 Ga. App. 407, 409 (1) (238 SE2d 748) (1977) (noting that new requirements should not be engrafted onto a statute "by judicial fiat"). As repeatedly explained by our Supreme Court, "where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends." (Citation and punctuation omitted.) *Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017).

In seeking to dismiss the adoption petition, the mother argued that a permanent guardian cannot petition for adoption specifically under OCGA § 19-8-10 (a) (1) or (5), as the grandmother did in this case,[7] because all issues of abandonment and dependency with respect to the parents are rendered moot once a permanent guardian is granted custody and control of the child. Neither the pertinent statutory language nor our precedent support the mother's argument.

"Although a permanent guardianship indisputably works a limitation of the parental power of a legal parent by vesting that parental power in the guardian, see OCGA § 15-11-242 (b), it does not forever terminate the parental rights of a parent." *In the Interest of M. F.*, 298 Ga. 138, 142 (2) (780 SE2d 291) (2015). Moreover, an order granting a permanent guardianship must "[e]stablish a reasonable visitation schedule which allows the child adjudicated as a dependent child to maintain meaningful contact with his or her parents through personal visits, telephone calls, letters, or other forms of communication or specifically include any restriction on a parent's right to visitation." OCGA § 15-11-242 (3). And, such an order also can include a provision requiring the parents to pay child support. OCGA § 15-11-240

_____

[7] As to the father, the grandmother also petitioned for adoption pursuant to OCGA § 19-8-10 (a) (3) based on his brain injury.

11

(b). Hence, even after custody of the child is awarded to a permanent guardian, the relationship between the parent and child is not completely severed, and parental claims and duties are not entirely eliminated. A parent therefore can still be found to have thereafter abandoned the child under OCGA § 19-8-10 (a) (1), and a permanent guardian thus is not foreclosed from petitioning for adoption on that statutory ground.

Nor does the grant of custody to the permanent guardian prevent the guardian from proving that the child is dependent under OCGA § 19-8-10 (a) (5). That statutory paragraph requires the adoption petitioner to establish that the "[p]arent without justifiable cause, has failed to exercise proper parental care or control due to misconduct or inability as set out in paragraph (3), (4), or (5) of subsection (a) of Code Section 15-11-310." If relying on OCGA § 15-11-310 (a) (5), as the grandmother did in this case, the adoption petitioner must show, among other things, that the child is a "dependent child due to lack of proper parental care or control by his or her parent."[8] OCGA § 15-11-310 (a) (5). And, "the record must contain evidence of present dependency, not merely past or potential future dependency." *In*

_____

[8] OCGA § 15-11-2 (22) defines a "dependent child" as a child who:
(A) Has been abused or neglected and is in need of the protection of the court:
(B) Has been placed for care or adoption in violation of law; or
(C) Is without his or her parent, guardian, or legal custodian.

12

*the Interest of H. B.*, 346 Ga. App. 163, 165 (1) (816 SE2d 313) (2018). Notably, however, when the child has been removed from the custody of the parent, present dependency can be shown through proof that, *if the child was returned to the parent at the time of the hearing,* the child would be dependent. See *In the Interest of B. R. J.*, 344 Ga. App. 465, 473 (1) (a) (810 SE2d 630) (2018). Thus, the fact that a permanent guardian has custody of the child rather than the parent does not prevent the guardian from establishing the present dependency of the child for purposes of OCGA § 19-8-10 (a) (5) and OCGA § 15-11-310 (a) (5).

Lastly, we note that the trial court pointed out in its dismissal order that a permanent guardianship constitutes a "permanent placement" under OCGA § 15-11-2 (54) (C). It is true that a permanent guardianship is defined as a permanent placement under that statutory paragraph[9] and that "for so long as an order of permanent guardianship remains effective, permanent custody of the child is committed to the permanent guardian as a matter of law." *In the Interest of M. F.*, 298 Ga. 138, 140 (1) (780 SE2d 291) (2015). But that does not mean that a permanent guardian is precluded from petitioning for and obtaining an adoption. Indeed, Georgia law

---

[9] OCGA § 15-11-2 (54) (C) defines "permanent placement" to include "[p]lacement of a child with a permanent guardian."

13

contemplates that a permanent guardianship can be terminated as the result of an adoption. See OCGA § 29-2-30 (a) ("The guardianship of a minor shall terminate on the date upon which the earliest of the following occurs: the minor reaches age 18, *the minor is adopted*, the minor is emancipated, the minor dies, or a court order terminating the guardianship is entered. . . .") (emphasis supplied).[10]

For all of the aforementioned reasons, we conclude that a permanent guardian who otherwise meets the eligibility criteria for adoption is not disqualified from petitioning to adopt a child under OCGA §§ 19-8-7 (a) and 19-8-10 (a). See *In re Goudeau*, 305 Ga. App. 718, 724-726 (700 SE2d 688) (2010) (noting that "OCGA

---

[10] The present case is distinguishable from the circumstance where a *third party* seeks permanent custody of a child who already has been appointed a permanent guardian. See *In the Interest of M. F.*, 298 Ga. at 140-141 (1) (noting that "a superior court has no authority to award permanent custody of a child under a permanent guardianship to anyone other than a guardian, and to secure the permanent custody of such a child, anyone other than a guardian generally must first petition the juvenile court to modify, vacate, or revoke the guardianship [under OCGA § 15-11-244 (c)]"). See also OCGA § 15-11-244 (a) ("The [juvenile] court shall retain jurisdiction over a guardianship action under this part for the sole purpose of entering an order following the filing of a petition to modify, vacate, or revoke the guardianship and appoint a new guardian."); OCGA § 15-11-244 (c) ("The guardianship shall be modified, vacated, or revoked based upon a finding, by clear and convincing evidence, that there has been a material change in the circumstances of the child who was adjudicated as a dependent child or the guardian and that such modification, vacation, or revocation of the guardianship order and the appointment of a new guardian is in the best interests of the child. Appointment of a new guardian shall be subject to the provisions of Code Sections 15-11-240 and 15-11-241.").

14

§ 19-8-3 establishes the legal requirements for an adoptive parent" and concluding that nothing in adoption code "prohibited unmarried couples from adopting children"); *In re D. J. F. M.*, 284 Ga. App. 420, 421-422 (643 SE2d 879) (2007) (concluding in case where relatives sought to adopt child pursuant to OCGA § 19-8-7 (a) that there was no statutory requirement under adoption code that either the petitioner or adopted child be United States citizens; rather, a relative who met eligibility requirements of OCGA § 19-8-3 (a) could seek adoption under OCGA § 19-8-7 (a)). Because the trial court erred in concluding that the grandmother could not petition for adoption of the child based on her status as a permanent guardian, we reverse the court's order dismissing the adoption petition.

*Judgment reversed. Gobeil and Markle, JJ., concur*.