**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 19, 2025**

# In the Court of Appeals of Georgia

A25A1701. IN THE INTEREST OF K. N. D. B., A CHILD.

PADGETT, Judge.

The father of K. N. D. B. appeals the juvenile court's order granting a petition for permanent guardianship of the child. He argues that the evidence was insufficient to support the juvenile court's finding that reasonable efforts toward reunification would be detrimental to the child. Because the evidence authorized the ruling, we affirm.

When reviewing the findings that support a guardianship order, this Court construes the evidence in favor of the judgment and determines whether a rational trier of fact could have found clear and convincing evidence that reunification services should not be provided. We neither weigh the evidence nor determine the credibility of witnesses; we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.

*In the Interest of J. W.*, 346 Ga. App. 443, 444 (816 SE2d 409) (2018) (citation and punctuation omitted).

To start with, we note that details about K. N. D. B.'s upbringing are limited. The record shows that K. N. D. B. was born out of wedlock to the father and mother on February 27, 2009. In August 2023, K. N. D. B. was placed in foster care with her maternal grandmother. The child was adjudicated dependent in November 2023 as to the father due to his "mental health and relationship issues."[1] A subsequent disposition order adopted a reunification case plan for the father. The case plan required the father to secure long-term housing, ensure he had adequate income to support the child, complete a psychological evaluation along with parental fitness, domestic violence, and neuropsychological assessments, and adhere to any recommendations resulting from the evaluation and assessments.

Following the neuropsychological evaluation, the father was provisionally diagnosed with schizophrenia. The evaluation recommended that the father partake

---

[1] K. N. D. B. was adjudicated dependent as to the mother on account of the mother's substance abuse, instability, and inability to protect the child. The mother consents to the permanent guardianship and thus is not a party to this appeal.

in intensive outpatient behavioral health treatment under the care of a psychiatrist to include individual and group therapy. The evaluation also recommended that the father take anger management classes.

In the ensuing months after the adjudication of dependency, contact between the father and K. N. D. B. was "sporadic." K. N. D. B. refused to meet with the father in person; she agreed to virtual therapy visitation with the father, which was facilitated by the Paulding County Division of Family and Children Services ("DFCS"). The DFCS case manager who observed some of the visits remarked that "there didn't seem to be any type of connection" between K. N. D. B. and the father, and that conversations "seemed very forced." For instance, the father would ask the child her name, how old she was, and whether the sky was blue. During one visit, the father quoted speeches from Abraham Lincoln. The child's guardian ad litem ("GAL") perceived that K. N. D. B. looked "extraordinarily uncomfortable" during the online visits. K. N. D. B. would often give one word answers to the father's questions and refuse to make eye contact. K. N. D. B. would sometimes turn her camera off and preemptively end the visitation session.

Meanwhile, K. N. D. B. started to "thriv[e]" in her grandmother's care. The grandmother provided K. N. D. B. food, clothing, medical care, and a safe living space. K. N. D. B. was assigned chores to include cleaning, cooking, and doing the laundry. K. N. D. B. consistently reported to the case managers that she felt happy and safe in her grandmother's home and desired to stay there.

Given these circumstances, DFCS petitioned for the grandmother to receive permanent guardianship of K. N. D. B., with the child's consent. The juvenile court held a hearing on the petition in October 2024. At the time of the hearing, then 15-year-old K. N. D. B. had been living with her grandmother for 14 months.

The father testified at the hearing that he was living with his mother and working full-time. He indicated that he completed the assessments recommended by the case plan and submitted to random drug screens. When asked about his provisional schizophrenia diagnosis, the father replied that he was not undergoing treatment because he received "no documentation" of such a diagnosis. The father attested that he participated in four or five virtual therapy sessions through CVS pharmacy to help him with "[c]hild conflict resolution," but

that he was otherwise not in counseling. Moreover, the father did not attend any anger management classes as recommended.

K. N. D. B. reiterated her desire to stay with her grandmother. The case manager and the GAL testified and recommended that the grandmother receive permanent guardianship of K. N. D. B., given that the father had been "semi-compliant at best" with his case plan and the reunification process had caused K. N. D. B. anxiety and stress. The juvenile court entered an order granting the grandmother permanent guardianship,[2] and the father now appeals.

In his sole enumeration of error, the father contends that the juvenile court erred in finding by clear and convincing evidence that continuing efforts toward reunification would be detrimental to K. N. D. B. Based on the record before us, we disagree.

Before a juvenile court may appoint a permanent guardian of a child, it must find, in part, that "reasonable efforts to reunify such child with his or her parents would be detrimental to such child or find that the living parents of such child have

---

[2] As part of its order, the juvenile court permitted visitation between the father and K. N. D. B., at the child's discretion.

consented to the permanent guardianship[.]"[3] OCGA § 15-11-240(a)(1). Here, evidence of the close bond K. N. D. B. formed with her grandmother over 14 months, K. N. D. B.'s expressed desire to live with her, the strained relationship between father and child, and the father's unwillingness to adequately address his mental health needs was sufficient for the juvenile court to find by clear and convincing evidence that continuing to work a reunification plan would be detrimental to K. N. D. B. See *In the Interest of J. W.*, 346 Ga. App. at 445–46 (1) (holding that evidence supported finding that continuing efforts to reunify dependent child with mother would be detrimental to child even though mother made considerable progress on her case plan); *In the Interest of K. G.*, 343 Ga. App. 345, 350 (2) (b) (807 SE2d 70) (2017) (affirming finding of clear and convincing evidence that reunification would be

---

[3] In appointing the maternal grandmother as a permanent guardian to then 15-year-old K. N. D. B., the juvenile court was also required to find that: termination of parental rights and adoption is not in the best interests of such child; the proposed permanent guardian can provide a safe and permanent home for such child; the appointment of a permanent guardian for such child is in the best interests of such child and that the individual chosen by such child as the child's permanent guardian is the individual most appropriate to be such child's permanent guardian taking into consideration the best interests of the child. See OCGA § 15-11-240(a)(2)-(5). The juvenile court addressed each factor in its order and the father does not challenge the court's findings as to these factors.

detrimental because of the child's specific needs and the mother's failure to meet them).

Although the father urges us to weigh in his favor his participation in virtual therapy sessions, the completion of his evaluations, and the lack of medical evidence regarding K. N. D. B.'s stress and anxiety over reunification, it was for the juvenile court — not this Court — to balance these facts against the evidence outlined above indicating that reunification would be detrimental to K. N. D. B. See *Strickland v. Strickland*, 298 Ga. 630, 633–34 (1) (783 SE2d 606) (2016) ("In the appellate review of a bench trial [over child custody], a trial court's factual findings must not be set aside unless they are clearly erroneous. Rather, due deference must be given to the trial court, acknowledging that it has the opportunity to judge the credibility of the witnesses.") (citations omitted). To the extent the father maintains that the juvenile court did not address whether reasonable efforts to reunify K. N. D. B. with him would be detrimental to the child, that assertion is belied by the record.

Accordingly, the juvenile court's order granting the petition for permanent guardianship is affirmed.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*